Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us. Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
December 16, 2019

**2019 CO 105**

**No. 15SC770, *Vigil v. People*—Criminal Law—Jury—Evidence—Witnesses.**

Vigil sought review of the court of appeals' judgment affirming his convictions of second degree burglary and second degree aggravated motor vehicle theft. As pertinent to the issues on review in the supreme court, the trial court denied Vigil's for-cause challenge to Juror C.A. but granted the prosecution's challenge to Juror D.K. At trial, and over defense counsel's objection, an officer was permitted to opine without qualification as an expert that Vigil's shoes visually matched shoeprints he photographed at the crime scene. With regard to Vigil's assignments of error concerning these rulings, the court of appeals concluded that the trial court had not abused its discretion by denying Vigil's challenge to Juror C.A.; that any error committed in granting the prosecution's challenge to prospective Juror D.K. would in any event have been harmless; and that the trial court did not abuse its discretion in allowing the officer to offer a lay opinion concerning the shoeprint comparison in question.

The supreme court affirmed, ruling that the trial court did not abuse its discretion in denying Vigil's challenge to Juror C.A.; granting the prosecution's challenge to prospective Juror D.K., even if it amounted to an abuse of discretion, did not result in any violation of Vigil's rights; and the trial court did not abuse its discretion in admitting the officer's testimony as lay opinion.

## The Supreme Court of the State of Colorado
2 East 14th Avenue • Denver, Colorado 80203

---

### 2019 CO 105

---

### Supreme Court Case No. 15SC770
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 12CA15

---

### Petitioner:

Nathan Richard Vigil,

v.

### Respondent:

The People of the State of Colorado.

---

### Judgment Affirmed
*en banc*
December 16, 2019

---

**Attorneys for Petitioner:**
Megan A. Ring, Public Defender
Brian Cox, Deputy Public Defender
    *Denver, Colorado*

**Attorneys for Respondent:**
Philip J. Weiser, Attorney General
Carmen Moraleda, Assistant Attorney General
    *Denver, Colorado*

**CHIEF JUSTICE COATS** delivered the Opinion of the Court.
**JUSTICE HOOD** specially concurs, and **JUSTICE HART** joins in the special concurrence.
**JUSTICE GABRIEL** dissents.

¶1     Vigil sought review of the court of appeals' judgment affirming his convictions of second degree burglary and second degree aggravated motor vehicle theft. As pertinent to the issues on review in the supreme court, the trial court denied Vigil's for-cause challenge to Juror C.A. but granted the prosecution's challenge to Juror D.K. At trial, and over defense counsel's objection, an officer was permitted to opine without qualification as an expert that Vigil's shoes visually matched shoeprints he photographed at the crime scene. With regard to Vigil's assignments of error concerning these rulings, the court of appeals concluded that the trial court had not abused its discretion by denying Vigil's challenge to Juror C.A.; that any error committed in granting the prosecution's challenge to prospective Juror D.K. would in any event have been harmless; and that the trial court did not abuse its discretion in allowing the officer to offer a lay opinion concerning the shoeprint comparison in question.

¶2     Because the trial court did not abuse its discretion in denying Vigil's challenge to Juror C.A.; because granting the prosecution's challenge to prospective Juror D.K., even if it amounted to an abuse of discretion, did not result in any violation of Vigil's rights; and because the trial court did not abuse its discretion in admitting the officer's testimony as lay opinion, the judgment of the court of appeals is affirmed.

# I.

¶3 Nathan Richard Vigil was charged with first degree aggravated motor vehicle theft, second degree burglary, theft, and attempt to commit second degree burglary in connection with the disappearance of a truck, motorcycle, and various other items of personal property from a farm in Conejos County. Although the attempted burglary count was dismissed and the defendant was acquitted of theft, he was convicted of second degree burglary and a lesser included offense of second degree aggravated motor vehicle theft. He was sentenced to concurrent terms of six years and eighteen months in the custody of the Department of Corrections.

¶4 Evidence was presented at trial from which the jury could find that in November 2010, the victim discovered that his truck, motorcycle, and other personal property were missing from his farm. An officer of the Conejos County Sheriff's Department responded to the farm and photographed shoeprints near the area where the truck had been parked. Witnesses informed the officer that the defendant had asked them to tow a truck to a trading post in the area but that they had not realized at the time that the truck belonged to the victim. While the defendant was being held for a different crime at the Alamosa County Sheriff's Office, the officer examined his shoes and determined that they "visually matched" shoeprints on the victim's farm.

3

¶5 During voir dire, Juror C.A. indicated that he knew the victim's family and that he might work on the father's farm equipment sometime in the future, and he appeared equivocal as to whether he could render an impartial verdict for these reasons. The court denied defense counsel's challenge for cause after directly asking C.A. if he could evaluate the victim's testimony "just like all the other witnesses who will testify," and after receiving C.A.'s answer, "I think I could." The court subsequently granted a prosecution challenge to prospective Juror D.K. on the ground that he was biased against the police and prosecution. Ultimately, both the prosecution and defense exhausted their allotted number of peremptory challenges, and neither used a peremptory challenge to strike Juror C.A. nor requested any additional challenge.

¶6 Without qualification as an expert and over defense objection at trial, the investigating officer in question was permitted to opine, on the basis of his observation of what he considered to be identical "Skechers" emblems and similar size, that the soles of the shoes he examined at the Sheriff's Office "visually matched the prints that were out on the scene."

¶7 On appeal, the intermediate appellate court affirmed the defendant's convictions. With regard to the defendant's assignments of error concerning these three rulings of the trial court, the appellate court found that the ruling concerning Juror C.A. fell within the broad discretion permitted trial courts when ruling on

4

challenges of juror bias; that any error, had one occurred, in granting the prosecution's challenge to prospective Juror D.K. was necessarily harmless; and that the trial court did not abuse its discretion in admitting lay opinion of shoeprint comparison.

¶8     The defendant petitioned this court for a writ of certiorari.

## II.

## A.

¶9     Criminal defendants in this jurisdiction are entitled to trial by an impartial jury of the county or district in which the offense was alleged to have been committed.   Colo. Const. art. II, § 16.   Within constitutional limitations, the legislature determines the qualifications for jury service.  *People v. White*, 242 P.3d 1121, 1124 (Colo. 2010).

¶10     Section 105 of the Uniform Jury Selection and Service Act, §§ 13-71-101 to -145, C.R.S. (2019), initially defines qualification for jury service in terms of citizenship and either residency or habitation in a particular county, but it then provides a number of specific conditions that will nevertheless disqualify an otherwise qualified prospective juror. § 13-71-105(1), (2), C.R.S. (2019).  Although a prospective juror may therefore be qualified in terms of citizenship and vicinage, he nevertheless "shall be disqualified" for failing to meet any of a number of other

5

conditions related to such things as his age, facility with the English language, physical or mental capabilities, familial obligations, and prior jury service. *Id.*

¶11 The absence of any qualification prescribed by statute to render a person competent as a juror is itself designated cause for removal, on the basis of which a challenge by one of the parties must be sustained. § 16-10-103(1)(a), C.R.S. (2019). Beyond the actual absence of some statutory qualification, however, the legislature has enumerated a number of other grounds that will also support a challenge for cause in criminal cases, broadly involving circumstances implicating a prospective juror's ability to remain impartial. These circumstances include such things as the prospective juror's relationship with the defendant or counsel, any prior adverse relationship with the defendant in a civil or criminal matter, prior juror service or service as a witness in a related matter, the existence of a fiduciary relationship with the defendant or a victim, and employment by either a law enforcement agency or the public defender's office. § 16-10-103(1)(a)–(k). The detection of actual enmity or bias toward the defendant or the state is, of course, also expressly designated cause for removal. § 16-10-103(1)(j).

¶12 In addition to permitting each party to challenge prospective jurors for cause, the legislature has provided a specific number of challenges to each side, varying with the nature of the charge and circumstances of the particular prosecution, to be exercised peremptorily. § 16-10-104(1), C.R.S. (2019). As the

term implies, these challenges may, within constitutional limitations, be exercised without regard for or specification of any reason whatsoever. The statute directs that such peremptory challenges are to be exercised "as provided by applicable rule of criminal procedure." § 16-10-104(2). Rule 24(d) of the Colorado Rules of Criminal Procedure not only provides the mechanics and timing for exercising peremptory challenges but also permits the trial court to add peremptory challenges to either side, or to both sides, for good cause shown.

¶13 Because challenges for cause, unlike peremptory challenges, are limited only by statutory grounds for removal and not in number, a trial court may entertain numerous challenges for cause from either or both sides during the selection of a single jury. As the Supreme Court has noted, often such challenges are "fast paced, made on the spot and under pressure," and the court "must be prepared to decide [them], often between shades of gray, 'by the minute.'" *United States v. Martinez-Salazar*, 528 U.S. 304, 316 (2000) (citation omitted). And while some of the qualifications for jury service and other statutory grounds justifying a challenge for cause are matters of law determinable with relative certainty, others are not.

¶14 The question whether there exists a state of mind in any particular prospective juror evincing enmity or bias toward the defendant or the state such that he cannot judge the matter fairly and impartially is necessarily a matter

7

involving an exercise of discretion on the part of the trial court and therefore a range of permissible judgments about the ability and willingness of that prospective juror. *See Carrillo v. People*, 974 P.2d 478, 485–86 (Colo. 1999). We have previously recognized "the trial court's unique role and perspective," and the "preferred position" in which it finds itself, in evaluating a prospective juror's credibility, demeanor, and sincerity in explaining his state of mind. *Id.* at 486 (quoting in part *People v. Macrander*, 828 P.2d 234, 239 (Colo. 1992), *overruled in part by People v. Novotny*, 2014 CO 18, ¶ 27, 320 P.3d 1194, 1203). For these reasons, among others, such assessments by a trial court are subject to a "very high standard of review," *id.* at 485–86, meriting a finding that the court has abused its discretion only if its ultimate ruling is "manifestly arbitrary, unreasonable, or unfair." *Freedom Colo. Info., Inc. v. El Paso Cty. Sheriff's Dep't*, 196 P.3d 892, 899 (Colo. 2008). In determining whether a trial court has abused its discretion, reviewing courts have therefore been admonished from considering merely whether they would have reached the same conclusion and, instead, must affirm as long as the trial court's decision fell within a range of reasonable options. *Churchill v. Univ. of Colo. at Boulder*, 2012 CO 54, ¶ 74, 285 P.3d 986, 1008 (quoting *E–470 Pub. Highway Auth. v. Revenig*, 140 P.3d 227, 230–31 (Colo. App. 2006)).

¶15 Even a ruling on a challenge for cause that clearly falls outside this acceptable range and is therefore erroneous, however, will not necessarily result

in a violation of a criminal defendant's right to an impartial jury. Should a prospective juror be erroneously removed for cause, that action, in and of itself, will not result in a biased juror sitting in judgment of the defendant. By the same token, the defendant's right to an impartial jury can be adversely affected by an erroneous denial of his challenge for cause only if that juror is not otherwise removed, as by a different challenge for cause or a challenge exercised peremptorily.

¶16    In a series of cases decided over the last quarter-century, the United States Supreme Court has retreated from its earlier pronouncements concerning the role and importance of peremptory challenges in jury selection and has now made clear that peremptory challenges have no basis in the federal constitution and are, instead, purely a creature of legislation. *Rivera v. Illinois*, 556 U.S. 148, 157 (2009) ("[T]here is no freestanding constitutional right to peremptory challenges."). Recounting the long history of legislative provision for peremptory challenges in federal criminal trials, and construing the current provision approved by Congress as Fed. R. Crim. P. 24, the Court has more recently emphasized the fact that a principal reason for permitting peremptory challenges has always been to help secure the constitutional guarantee of trial by an impartial jury, *Martinez-Salazar*, 528 U.S. at 314–16; that exercising the authorized number of peremptory challenges is all that the parties are entitled to by the rule, *id*. at 315; that the

9

decision of a defendant to use one of his peremptory challenges to cure what turns out to be an erroneous denial of a for-cause challenge therefore does not impair his statutory right, *id.* at 317; and that the mistaken denial of a state-provided peremptory challenge does not, without more, violate the federal constitution, *Rivera*, 556 U.S. at 158.

¶17 In *Novotny*, we reconsidered a line of authority in this jurisdiction dictating automatic reversal for any erroneous ruling on a challenge for cause adversely impacting the defendant's ability to shape the composition of the jury through the use of peremptory challenges. ¶¶ 14–17, 320 P.3d at 1199–1200. Much as the Supreme Court had done in disavowing its earlier pronouncements from *Swain v. Alabama*, 380 U.S. 202, 219 (1965), and those cases on which it relied, *see Rivera*, 556 U.S. at 160; *Martinez-Salazar*, 528 U.S. at 317 n.4, we overturned this line of our own precedents as having been substantially undermined by developments in the harmless-error doctrine in general, and the structural error/trial error dichotomy in particular, *Novotny*, ¶ 17, 320 P.3d at 1200. Because we were there faced with the specific question whether automatic reversal was the proper remedy for such an error in light of the subsequently developed structural error doctrine, we reserved the question whether the use of a peremptory challenge to remove a prospective juror for whom a challenge for cause was erroneously denied must be disregarded as harmless in every case. *Id.* at ¶¶ 1–2, 320 P.3d at 1196. Instead we

remanded to the court of appeals for consideration of the appropriate remedy in that particular case. *Id.* at ¶ 27, 320 P.3d at 1203. In the intervening five years, a number of divisions of the intermediate appellate court have reasoned that in the absence of bad faith or actual participation by a biased juror, the use of a peremptory challenge to cure an erroneous ruling on a defendant's challenge for cause *is* necessarily harmless. *People v. Marciano*, 2014 COA 92M-2, ¶ 10, 411 P.3d 831, 835 (citing *People v. Wise*, 2014 COA 83, ¶¶ 28–29, 348 P.3d 482, 489); *People v. Wilson*, 2014 COA 114, ¶ 23, 356 P.3d 956, 963 (quoting *Wise*, ¶ 28, 348 P.3d at 489); *Wise*, ¶¶ 28–29, 28 n.6, 348 P.3d at 489 & n.6.

¶18 Although in *Novotny* we focused on the propriety of automatic reversal for what we had previously considered to be the "forced" use of a defendant's peremptory challenge to cure an erroneous ruling on a challenge for cause, our reliance not only on developments in the harmless error doctrine, but also on more recent Supreme Court jurisprudence finding a lack of any constitutional underpinning whatsoever for peremptory challenges, largely foreshadowed today's holding. Today we expressly answer the question left open in *Novotny* by disavowing our prior understanding that the constitution, statute, rule, or some combination of the three, grants a criminal defendant a right to shape the jury through the use of peremptory challenges.

¶19    In both the context of erroneously denying a defense challenge for cause and the context of erroneously granting a prosecution challenge for cause, we had come to believe that a criminal defendant, quite apart from being denied his constitutional right to an impartial jury, is harmed, or disadvantaged tactically, *see Blades v. DaFoe*, 704 P.2d 317, 322 (Colo. 1985), *overruled in part by Laura A. Newman, LLC v. Roberts*, 2016 CO 9, ¶ 2, 365 P.3d 972, 973, by being deprived of an equal opportunity to change the composition of, or "shape," the jury, *see People v. Lefebre*, 5 P.3d 295, 304 (Colo. 2000), *overruled in part by Novotny*, ¶ 27, 320 P.3d at 1203; *Macrander*, 828 P.2d at 244. For this proposition, we relied in part on pre-harmless error caselaw finding that violation of the peremptory challenge statute alone amounted to harm requiring reversal, *see, e.g., Macrander*, 828 P.2d at 243 (relying on *Denver City Tramway Co. v. Kennedy*, 117 P. 167 (Colo. 1911)), and in part on now-rejected Supreme Court caselaw implicitly finding federal constitutional underpinnings of peremptory challenges, *see, e.g., Lefebre*, 5 P.3d at 306 (understanding *Ross v. Oklahoma*, 487 U.S. 81 (1988), to hold that a federal due process violation results if a trial court fails to provide a defendant his state law-granted right to peremptory challenges, a proposition expressly rejected by the Court in *Rivera*, 556 U.S. at 158). In our most recent consideration of this proposition, and the only instance in which we actually relied on language from the statute and rule themselves, we announced that "[t]he function of peremptory

12

challenges in a criminal proceeding is to allow both the prosecution and the defense to secure a more fair and impartial jury by enabling them to remove jurors whom they perceive as biased, even if the jurors are not subject to a challenge for cause," *Lefebre*, 5 P.3d at 303, and we inferred that the allowance by statute and rule of the same number of peremptory challenges, in the absence of good cause to add peremptory challenges to one or both sides, was intended to further this end, *id.* at 303–04.

¶20　While providing the same number of peremptory challenges to both the defense and prosecution in the absence of good reason to do otherwise clearly evidences an intent to permit, at least initially, each side to exercise the same number of peremptory strikes, on its face it implies virtually nothing about the purpose for providing for peremptory, in addition to for-cause, challenges. Much like the federal legislative authorization for peremptory strikes, our statute simply provides a specified number of strikes, varying with the nature of the charges and number of defendants, and our rule merely embellishes on that provision by permitting additional strikes to the prosecution or defense for good cause. Our prior cases fail to suggest support in the text or legislative history of either provision for any underlying legislative intent to permit the parties to shape the jury to their tactical advantage, as distinguished from merely to aid in the ultimate acquisition of a constitutionally required fair and impartial jury.

¶21    In *Martinez-Salazar*, the Supreme Court expressly rejected the notion that a criminal defendant who expends one of his peremptory challenges to cure an erroneous ruling on his challenge for cause has effectively been "forced" to do so in order to remove the objectionable veniremember and, therefore, has effectively been deprived of one of the strikes allotted him by Rule 24.  528 U.S. at 314–15. The Court reasoned that where the defendant has exercised the number of peremptory challenges permitted by the rule, whatever the reason for his decision to do so, he has received nothing less than that to which the rule entitled him.  *Id.* at 315.  Following this same logic, where the court erroneously grants a challenge for cause, the party making that challenge has not effectively received a peremptory challenge beyond the number allotted him by statute, and therefore unless the court acted in bad faith to assist him in some way other than acquiring a fair and impartial jury, he has received no more than that to which the statute entitled him.

¶22    We are not unmindful that retreating from the shape-the-jury rationale that led to the now-overturned remedy of automatic reversal further implicates the doctrine of stare decisis.  For virtually the same reasons we found it important and justified in *Novotny* to partially overturn this line of our own prior holdings, we consider it similarly justified to now overturn them in full.  To the extent that our prior rationale was based on pre-harmless error holdings, the constitutional

14

significance of peremptory challenges, and even federal due process implications of violating state peremptory challenge law, those premises have now all been independently swept away by developments in the jurisprudence of the Supreme Court which we have either already adopted or by which we are constitutionally bound. As we indicated in *Novotny*, the venerable principle of stare decisis is not an immutable law but rather ultimately a matter of discretion for a high court, and when, as here, the bases for a prior holding, whether legal or factual, no longer support that holding, and especially where retreating from that holding would not unfairly upset settled expectations, overturning it is not only merited but is in fact an obligation of the high court. *Novotny*, ¶¶ 24–26, 320 P.3d at 1202–03.

**B.**

¶23 Vigil contends that the trial court erred by denying his challenge for cause to Juror C.A. Though Juror C.A. initially appeared equivocal as to his ability to remain impartial due to his acquaintance with the victim's family and the possibility that he might work on the father's farm equipment sometime in the future, the trial judge sought, and C.A. expressly gave, his assurance that he thought he could evaluate the victim's testimony "just like all the other witnesses who will testify." It was for the trial court not only to assess the juror's credibility but also to evaluate whether he would be able to render an impartial verdict.

¶24 Contrary to the assertion of the defendant, it was unnecessary for the trial court to query the prospective juror in precise terms of bias and impartiality and to receive his express assurance that he was not biased and both could and would render an impartial verdict. While the ultimate aim of jury selection is to produce an unbiased and impartial jury, *Smith v. Dist. Court*, 907 P.2d 611, 613 (Colo. 1995), neither the United States Constitution nor the Colorado Constitution "dictate[s] a catechism for voir dire." *People v. Harlan*, 8 P.3d 448, 464 (Colo. 2000) (alterations in original) (quoting *Morgan v. Illinois*, 504 U.S. 719, 729 (1992)), *overruled in part by People v. Miller*, 113 P.3d 743, 748 (Colo. 2005). Similarly, the statutory requirement that a challenge for cause be sustained as to any juror having a state of mind evincing enmity or bias toward the defendant or the state also makes clear that no person shall be disqualified by reason of having formed an opinion as to guilt or innocence if the court is satisfied from examination of the juror or from other evidence that he will render a verdict according to the law and the evidence submitted to the jury at the trial. § 16-10-103(1)(j). Where the source of concern for C.A.'s impartiality arose from his prior relationship with the victim's family, it was within the trial court's unique role in jury selection and discretion to conclude from C.A.'s clarification that he could assess the victim's testimony just as any other witness and that he could render an impartial verdict.

16

¶25 With regard to the trial court's ruling granting the prosecution's for-cause challenge of prospective Juror D.K., whether that ruling amounted to an abuse of discretion or not, in the absence of bad faith, which has not been asserted here, *see Johnson v. Schonlaw*, 2018 CO 73, ¶ 16, 426 P.3d 345, 350, it could not require reversal. Because D.K. did not sit in judgment of the case, that ruling could not have deprived the defendant of his constitutional right to a fair and impartial jury; and because neither the prosecution nor the defendant is granted any right in this jurisdiction, by constitution, statute, or rule, to shape the composition of the jury through the use of peremptory challenges, the defendant could not have been harmed by the deprivation of any such right.

**III.**

¶26 In *Venalonzo v. People*, 2017 CO 9, ¶ 22, 388 P.3d 868, 875, this court recently clarified the distinction between expert and lay opinion within the contemplation of Rules 701 and 702 of the Colorado Rules of Evidence. If opinion testimony could be based on an ordinary person's experiences or knowledge, the testimony in question may be admitted as a lay opinion. *Id.* at ¶ 2, 388 P.3d at 871. If, however, a witness offers testimony in the nature of an opinion that could not be formed without reliance on specialized experiences, knowledge, or training, for that testimony to be admissible, the witness must be qualified as an expert. *Id.*

¶27    Vigil asserts that the officer's opinion testimony constituted improper expert testimony in the guise of lay testimony. At trial, the prosecution asked the officer to compare the shoeprints he photographed at the victim's farm with the photos he took of Vigil's shoes. The officer merely opined that the print of Vigil's shoes "visually matched the prints that were out on the scene." He later explained that he based his comparison of the shoeprint and the shoe itself on their identical "Skechers" emblems and similar size measurements.

¶28    Because neither a comparison of a shoe and an imprint left in the dirt by a shoe based on the size of each, nor a visual comparison of an emblem on the sole of a shoe and an imprint in the dirt left by a shoe, is beyond the ken of an ordinary person without specialized training or experience of any kind, *id.*, an opinion that the defendant's shoe caused the imprint in the dirt observed by the officer was admissible as a lay opinion. Although the officer in question made reference to his experience and training with regard to evidence collection generally, that testimony could not reasonably have been understood to suggest that the officer had specialized training in the comparison of shoeprints or that his opinion was entitled to any greater weight than the opinion of anyone capable of measuring the size of the two and visually observing the emblem and imprint in the dirt. The trial court therefore did not abuse its discretion by admitting the officer's shoeprint comparison testimony as lay testimony pursuant to CRE 701.

18

¶29     We also reject the defendant's contention that the officer's testimony was unhelpful to the jury.   Although he photographed the prints in question, his measurements of the shoes themselves and the imprints at the scene were the first-hand observations of the evidence in question.

## IV.

¶30     Because the trial court did not abuse its discretion in denying Vigil's challenge to Juror C.A. for cause; because any error the trial court committed in granting the prosecution's challenge to prospective Juror D.K. for cause did not result in a violation of Vigil's constitutional, statutory, or rule-based rights, and therefore does not require reversal; and because the trial court properly admitted the officer's testimony as lay opinion, the judgment of the court of appeals is affirmed.

**JUSTICE HOOD** specially concurs, and **JUSTICE HART** joins in the special concurrence.
**JUSTICE GABRIEL** dissents.

JUSTICE HOOD, specially concurring.

¶31    For the reasons set forth below, I join the court's judgment in all respects.  I write separately, however, to explain why I believe *People v. Novotny*, 2014 CO 18, 320 P.3d 1194, dictates today's result as to prospective Juror D.K. and why I believe the division majority's "clear bias" rationale as to Juror C.A. was incorrect. Therefore, I respectfully concur.

## I. Prospective Juror D.K. and Prejudice Post-*Novotny*

¶32    The majority acknowledges that the court's decision in *Novotny* "largely foreshadowed today's holding."  Maj. op. ¶ 18.  The majority then explains that "[t]oday we expressly answer the question left open in *Novotny* by disavowing our prior understanding that the constitution, statute, rule, or some combination of the three, grants a criminal defendant a right to shape the jury through the use of peremptory challenges."  *Id.*; *see also id.* at ¶ 20 ("Our prior cases fail to suggest support in the text or legislative history of either provision for any underlying legislative intent to permit the parties to shape the jury to their tactical advantage, as distinguished from merely to aid in the ultimate acquisition of a constitutionally required fair and impartial jury.").

¶33    The majority's characterization of *Novotny* as simply foreshadowing today's holding is puzzling, however, given *Novotny*'s rationale.  Of course, the opinion is best known for overruling the automatic-reversal rule of *People v. Macrander*,

1

828 P.2d 234 (Colo. 1992). But in overruling *Macrander*, the court expressly disavowed the notion that parties have a due process right to use peremptory challenges to "shape" the jury. *See, e.g.*, *Novotny*, ¶ 22, 320 P.3d at 1201 ("Whether or not the Fourteenth Amendment due process violation we mistakenly identified in *Lefebre* could have itself catapulted impairment of a defendant's ability to shape the jury into this limited class of fundamental constitutional errors, the Supreme Court has since made abundantly clear that no such due process protection exists for state-granted peremptory challenges.").

¶34   Thus, from my perspective, *Novotny* did more than foreshadow today's holding. It foreordained it. Were this simply a case of foreshadowing—with a genuine choice remaining—I might choose a different path. But, as it is, I feel compelled to join the decision because we have done no more than arrive at the end of the path on which *Novotny* placed us. Although I dissented in *Novotny*, stare decisis compels my reluctant obedience to its dictates today. On that basis, I concur as to the Juror D.K. portion of the court's holding in the case at bar.

## II. Juror C.A. and the Standard for Reviewing Bias

¶35   As to Juror C.A., I note that the majority correctly eschewed the division's articulation of a "clear bias" standard of review in evaluating whether Juror C.A. should have been dismissed for cause. I write separately to spell out why I think this was a wise choice.

2

¶36    The division concluded that "a trial court is not compelled to grant a challenge for cause where a juror's responses are equivocal and do not articulate a clear expression of bias . . . ." *People v. Vigil*, 2015 COA 88M, ¶ 11, __ P.3d __; *see also id.* at ¶ 15 ("We do not agree, however, that the juror's answers taken as a whole revealed any 'clear bias' that 'would make his dismissal from the jury compulsory.'" (quoting *People v. Young*, 16 P.3d 821, 826 (Colo. 2001))).  Because Juror C.A. "did not clearly evince bias," the division held that "Juror C.A.'s equivocal responses did not require the trial court to excuse him."  *Id.* at ¶¶ 11, 14.

¶37    In gleaning this "clear bias" standard, the division relied on references to clear bias in several of our decisions, the most relevant being *Carrillo v. People*, 974 P.2d 478, 488 (Colo. 1999), and *Young*, 16 P.3d at 826.  But I believe the division's reliance is misplaced.

¶38    True, in concluding in *Carrillo* that the trial court did not abuse its discretion in denying a defendant's challenge for cause, this court observed that a prospective juror's "answers to questions about his working relationship with [the victim's father] appear ambiguous and fail to articulate a clear expression of bias requiring his dismissal."  974 P.2d at 488.  And, following a similar conclusion in *Young*, we briefly noted in dicta that the record did "not reveal that [the challenged juror] had any clear bias against [the defendant] which would make his dismissal from the jury compulsory."  16 P.3d at 826.

3

¶39 But while these observations may permit an appellate court to consider whether a juror's responses articulated a "clear expression of bias" when reviewing the challenged voir dire as a whole, they do not announce a new legal standard for determining whether a juror evinced enmity or bias, as the division did here. Not only is such a standard absent from the challenge-for-cause statute's plain language, *see* § 16-10-103(1)(j), C.R.S. (2019), it also doesn't make sense. After all, if a trial court can never abuse its discretion in denying a challenge for cause if a prospective juror's responses are equivocal, appellate review of such decisions could become a hollow exercise. Rare is the case in which a prospective juror unyieldingly clings to a clear statement of bias. Unless the prospective juror is intent on being excused, probing by counsel and the court typically leaves us with a muddle of equivocal statements, not unlike what we see here as to Juror C.A. In the absence of some evidence of rehabilitation demonstrating that the juror is willing to render a verdict according to the law and evidence—and not based on enmity or bias—equivocation alone can make it manifestly unreasonable or unfair to deny a challenge for cause. Accordingly, the majority properly avoided applying a "clear bias" standard of review.

¶40 Likewise, the majority is right to tacitly reject the defendant's argument for a "genuine doubt" standard. Pointing to our decision in *People v. Russo*, 713 P.2d 356, 362 (Colo. 1986), in which we stated in part that "[i]f the trial court has genuine

4

doubt about the juror's ability to be impartial . . . , it should resolve the doubt by sustaining the challenge," Vigil argues that an expression of doubt as to impartiality, minus rehabilitation expressly regarding impartiality, requires the prospective juror's dismissal for cause. But this "genuine doubt" language is also nowhere to be found in the challenge-for-cause statute. *See* § 16-10-103(1)(j).

¶41 Instead, the majority correctly focuses on the statute's plain language. Maj. op. ¶ 11 ("The detection of actual enmity or bias toward the defendant or the state is, of course, also expressly designated cause for removal."); *see also id.* at ¶ 24 ("Similarly, the statutory requirement that a challenge for cause be sustained as to any juror having a state of mind evincing enmity or bias toward the defendant or the state also makes clear that no person shall be disqualified by reason of having formed an opinion as to guilt or innocence if the court is satisfied from examination of the juror or from other evidence that he will render a verdict according to the law and the evidence submitted to the jury at the trial.").

¶42 And here, there was at least some follow-up by the trial court. I therefore agree with the majority that under the highly deferential standard of review, premised on the trial court's opportunity to see and interact with the juror, there was no abuse of discretion.

¶43 In the end, the division put it well:

> Juror C.A.'s statement that he would treat [the victim's] testimony the same as other witnesses' testimony meant that he would treat [the

5

victim's] testimony impartially (i.e., he would not be unduly partial toward [the victim] when assessing his testimony). Juror C.A.'s statement that he would treat [the victim's] testimony impartially was some evidence that he would render an impartial verdict (i.e., he would not be unduly partial toward [the victim] when rendering the verdict).

With the benefit of hindsight and time to parse the record, we could conceive of more complete follow-up questions for Juror C.A. However, simply because we could construct additional useful questions for the juror does not necessarily give us license to overturn the trial court's decision. The restraint on our review of the trial court's ruling reflects the supreme court's considered judgment of the respective roles of the trial and appellate courts regarding challenges for cause. Thus, we must resist the temptation to second-guess the trial court's decision based on a cold record.

Although the trial court's questioning could have been more comprehensive, it still elicited a response significant to the challenge for cause, as explained above. Therefore, even if imperfect, the trial court's questioning of the juror weighs in favor of affirmance.

*Vigil*, ¶¶ 16–18 (internal citations omitted).

¶44 In concluding, I echo the sentiment expressed by the division majority. The trial court's follow-up questioning of Juror C.A. regarding his potential bias in favor of the victim in this case was less than ideal. But this was a quintessential game-time call. The trial judge was there; we weren't. Moreover, I take comfort in the fact that this court tends to see outliers. I place my faith in Colorado's trial judges to go beyond perfunctory questioning that superficially protects the record but endangers a defendant's (and, when at issue, the state's) right to a truly fair and impartial jury.

6

I am authorized to state that JUSTICE HART joins in this special concurrence.

JUSTICE GABRIEL, dissenting.

¶45     I agree with the majority's conclusion that the trial court did not abuse its discretion in admitting a police officer's lay opinion that Vigil's shoes matched shoeprints that the officer had photographed at the crime scene. Maj. op. ¶¶ 28–30. I disagree, however, with the majority's conclusions that (1) the trial court did not abuse its discretion in denying Vigil's challenge for cause to Juror C.A. and (2) any error that the trial court committed in granting the prosecution's challenge for cause as to Juror D.K. did not prejudice Vigil. *Id.* In particular, I disagree with the majority's apparent test for prejudice, which makes it virtually impossible for a criminal defendant ever to prove prejudice in this context and which I believe results in an unlevel playing field.

¶46     Accordingly, I respectfully dissent.

## I. Factual Background

¶47     The majority does not quote much of the voir dire examinations of either Juror C.A. or Juror D.K. Because those examinations are central to my analysis, I discuss them at greater length.

¶48     During voir dire, Juror C.A. volunteered that he had "done quite a bit of work" for the victim and his family and that he had "gotten along great with them for years and years." The following exchange then occurred with defense counsel:

1

[Defense Counsel]: . . . Due to these business relationships you've had with the alleged victim in this case, do you feel it would be difficult for you to render an impartial verdict?

[Juror C.A.]: I can't say that. I really can't. I'd like to say no. I'd like to say no, but I don't know.

[Defense Counsel]: So what are you saying? Are you saying, yes, you can render an impartial [verdict] or no you can't?

[Juror C.A.]: It's something that sits there. I know the people. I really do. I don't know the defendant here.

[Defense Counsel]: Do you think you may be doing business with them in the future?

[Juror C.A.]: Possibly with the dad. I work out in that area, out in Questa. And I come through there, and I do stop and visit with [the victim's father] every once in a while. If he's got something that's out of whack on his pivots, I go and take care of it for him. I don't know.

[Defense Counsel]: Your Honor, I'm going to ask the same thing of [Juror C.A.]. He stated he has a business relationship with the — [the victim] and his family and may be having business in the future; and in the back of his mind, that may make him where he's not completely unbiased or prejudiced in making an ultimate determination.

THE COURT: Sir, can you evaluate his testimony just the same as the testimony of all the other witnesses?

[Juror C.A.]: His you're talking about?

THE COURT: [The victim's]. Can you evaluate his testimony just like all the other witnesses who will testify in this case?

[Juror C.A.]: I think I could.

THE COURT: Challenge for cause is denied.

¶49     Ultimately, Juror C.A. served as the jury's foreperson.

2

¶50 Also during voir dire, Juror D.K. noted that he was watching a law enforcement officer friend's farm for him. The prosecution then asked Juror D.K. how on a scale of one to ten, with ten being the best, he would "rate" law enforcement in Conejos County. D.K. responded, "I would have to split the difference and say five because I take it on a case-by-case basis. So some they get right; some they get wrong." He explained this answer by noting that he had heard allegations of "heavy-handedness and favoritism, racism," and when the prosecution asked if that would influence how he would look at this case, he responded, "It depends on the evidence presented."

¶51 Juror D.K. then observed, "My tendency is for my heart to be in favor of the defendant," and he said that he would "like to let [the defendant] off." He added, however, by way of explanation, "I would like to think the best of most people," including the police in Conejos County, many of whom he thought were "really nice guys." When the prosecution then asked whether his foregoing comments meant that he was predisposed to acquit Vigil, he answered, "I'm predisposed to let him or his mouthpiece have their say." Having already exhausted its allotted peremptory challenges, the prosecution challenged Juror D.K. for cause.

¶52 The court then allowed defense counsel to question Juror D.K., and counsel asked him if he could reach a verdict based solely on the evidence presented and the court's instructions. Juror D.K. responded, "Yes, I believe so. I take this

seriously."  Although he then offered that he had had a negative experience with the justice system elsewhere in the past, when defense counsel asked whether that experience would affect how he thought today, he replied:

> No.  I wouldn't think so.  Again, I take this seriously.  It's a responsibility.  If a person has done something which society believes merits retribution, then that person should be punished; but I don't want to just throw somebody to the dogs unless I'm sure that that person deserves the punishment.

¶53     Defense counsel followed up by asking if Juror D.K. meant that it would be unfair not to afford Vigil the presumption of innocence.  D.K. responded, "This is the United States.  You are presumed innocent until you're found guilty."  He added, however, that although he is a forgiving person, some things should not be forgiven, including "murder, rape, incest, thievery, assault, et cetera, et cetera."

¶54     Based on this colloquy, defense counsel passed Juror D.K. for cause.  The court, however, granted the prosecution's challenge.

## II.  Analysis

¶55     I begin by setting forth the law applicable to challenges for cause.  I then address the trial court's rulings on the challenges for cause to Jurors C.A. and D.K., and I conclude that the court abused its discretion in denying Vigil's challenge to Juror C.A. and in granting the prosecution's challenge to Juror D.K.  I end by addressing the issue of prejudice, and I conclude that (1) because Juror C.A. sat on the jury, reversal is required and (2) the majority's test for prejudice renders it all

4

but impossible for a defendant to prove prejudice in this context and results in what I believe to be an unlevel playing field.

## A. Law Regarding Challenges for Cause

¶56 A fair trial is a basic requirement of due process, and the right to challenge a juror for cause is an integral part of a fair trial. *People v. Macrander,* 828 P.2d 234, 238 (Colo. 1992), *overruled on other grounds by People v. Novotny*, 2014 CO 18, ¶ 27, 320 P.3d 1194, 1203. To ensure a defendant's right to a fair trial with an impartial jury, a trial court must excuse biased or prejudiced persons from the jury. *Morrison v. People,* 19 P.3d 668, 672 (Colo. 2000). This requirement is codified in section 16-10-103(1)(j), C.R.S. (2019), which requires a court to sustain a challenge for cause when "[t]he existence of a state of mind in the juror evinc[es] enmity or bias toward the defendant or the state." *Accord* Crim. P. 24(b)(1)(X).

¶57 Specifically, a trial court must grant a challenge for cause if, among other things, a prospective juror is unwilling or unable to accept the basic principles of criminal law and render a fair and impartial verdict based on the evidence admitted at trial and the court's instructions. *Morrison,* 19 P.3d at 672. Similarly, if the trial court has genuine doubt about the prospective juror's ability to be impartial, it should ordinarily resolve the doubt by sustaining the challenge. *People v. Russo,* 713 P.2d 356, 362 (Colo. 1986).

¶58 Conversely,

5

no person summoned as a juror shall be disqualified by reason of a previously formed or expressed opinion with reference to the guilt or innocence of the accused, if the court is satisfied, from the examination of the juror or from other evidence, that he will render an impartial verdict according to the law and the evidence submitted to the jury at the trial.

§ 16-10-103(1)(j); *accord* Crim. P. 24(b)(1)(X).

¶59 When reviewing a trial court's denial of a challenge for cause, we review the entire voir dire at issue to place the prospective juror's statements in context, and we review the trial court's ruling on a challenge for cause for an abuse of discretion. *People v. Young,* 16 P.3d 821, 824 (Colo. 2001). The abuse of discretion standard gives deference to the trial court's credibility assessment of a prospective juror's responses, recognizes the trial court's unique role and perspective in evaluating the demeanor and body language of live witnesses, and serves to discourage an appellate court from "second-guessing those judgments based on a cold record." *Carrillo v. People,* 974 P.2d 478, 486 (Colo. 1999). Despite the wide discretion afforded trial courts, however, appellate courts must not "abdicate their responsibility to ensure that the requirements of fairness are fulfilled." *Morgan v. People,* 624 P.2d 1331, 1332 (Colo. 1981).

¶60 Applying these principles, appellate courts in this state have concluded that reversible error occurs when a trial court denies a challenge for cause to a prospective juror who expresses doubt as to his or her ability to be impartial and

neither the prosecution nor the trial court then rehabilitates that juror. *See, e.g., People v. Luman,* 994 P.2d 432, 436 (Colo. App. 1999); *see also People v. Gurule,* 628 P.2d 99, 103 (Colo. 1981) (concluding that reversal was required when a prospective juror had formed a firm opinion as to the defendant's guilt and her voir dire responses did not sufficiently call that opinion into question so as to raise a credibility issue for the court's determination in ruling on the defendant's challenge for cause); *Morgan,* 624 P.2d at 1332 (concluding that the trial court had abused its discretion in failing to excuse a prospective juror for cause when the juror repeatedly indicated that he would have difficulty applying the principle that the burden of proof rested on the prosecution, notwithstanding the fact that the juror at one point also said that he could "go along" with the presumption of innocence and the defendant's right to remain silent).

## B. Juror C.A.

¶61    In light of the foregoing principles, I would conclude that the trial court abused its discretion in denying Vigil's challenge for cause as to Juror C.A.

¶62    As noted above, Juror C.A. consistently expressed doubt as to his ability to render an impartial verdict, given his long ("years and years") and "great" relationship with the victim's family. Specifically, when asked directly whether it would be difficult for him to render an impartial verdict, he responded, "I'd like to say no, but I don't know." He added, "It's something that sits there. I know the

7

people. I really do. I don't know the defendant here." And he indicated that he anticipated possibly doing business with the victim's family in the future.

¶63 Neither the trial court nor the prosecution asked Juror C.A. directly whether, despite his relationship with the victim's family, he could render an impartial verdict and follow the court's instructions. The court merely asked, generally and without reference to Juror C.A.'s expression of doubt as to whether he could be fair, whether Juror C.A. could evaluate the victim's testimony just like all of the other witnesses. Although Juror C.A. responded, "I think I could," this response did not resolve his consistent expressions of doubt as to whether he could render an impartial verdict, and he never expressed a belief that he could—or that he would try to—do so. To the contrary, his statement that he did not know whether he could render an impartial verdict stood unrebutted, even after he responded to the court's single question to him.

¶64 In these circumstances, I would conclude that the trial court abused its discretion in denying Vigil's challenge for cause as to Juror C.A. *See Gurule,* 628 P.2d at 103; *Morgan,* 624 P.2d at 1332; *Luman*, 994 P.2d at 436. Although I recognize and respect trial courts' broad discretion regarding challenges for cause, I am also mindful of our obligation as appellate judges not to abdicate our responsibility to ensure that the requirements of fairness are fulfilled. *Morgan,* 624 P.2d at 1332. I believe that this case requires our intervention.

8

## C.  Juror D.K.

¶65    Applying the above-described legal principles, I would further conclude that the trial court abused its discretion in granting the prosecution's challenge for cause as to Juror D.K.

¶66    In contrast to Juror C.A., Juror D.K. repeatedly and consistently provided assurances that he took his obligations as a juror seriously, that he could reach a verdict solely based on the evidence and the court's instructions, and that he understood the presumption of innocence.  He even stated that he believed that crimes like "thievery," which was the type of charge that Vigil was facing, should not be forgiven.

¶67    Nor do I perceive anything in Juror D.K.'s responses indicating a bias against either the prosecution or law enforcement.  Juror D.K. did no more than recognize that police officers, like all other witnesses, are sometimes right and sometimes wrong, and he committed to assess their credibility based on the evidence.  I perceive little difference between these statements and Juror C.A.'s statement that he thought he could evaluate the victim's testimony like that of all of the other witnesses, which statement precipitated the trial court's decision to deny Vigil's challenge for cause as to Juror C.A.

¶68    On these facts, although the prosecution may well have wished to exercise a peremptory challenge had it had any remaining, I perceive no legitimate basis

for a challenge for cause as to Juror D.K. Accordingly, I would conclude that the trial court abused its discretion in granting that challenge.

## D. Prejudice

¶69 Having thus concluded that the trial court abused its discretion in denying Vigil's challenge for cause as to Juror C.A. and in granting the prosecution's challenge for cause as to Juror D.K., the question remains whether either of these errors prejudiced Vigil so as to require a new trial.

¶70 As to Juror C.A., the majority does not address the question of prejudice because it perceived no abuse of discretion in the denial of the challenge for cause. For the reasons set forth above, I believe that the trial court did abuse its discretion, and the prejudice here is manifest. Not only did a biased juror (i.e., Juror C.A.) sit, despite Vigil's well-founded effort to strike him for cause, but also he served as the jury foreperson. Accordingly, I believe that Vigil is entitled to a new trial.

¶71 Although the foregoing is sufficient to end my analysis, I feel compelled to address the majority's recitation of the test for prejudice regarding the erroneous grant of the prosecution's challenge for cause as to Juror D.K.

¶72 With respect to Juror D.K., the majority concludes that whether the trial court's ruling amounted to an abuse of discretion or not, Vigil suffered no prejudice because (1) Juror D.K. did not sit in judgment of the case and therefore the court's ruling could not have deprived Vigil of a fair and impartial jury and

10

(2) neither the prosecution nor Vigil had any right to shape the composition of the jury through the use of peremptory challenges and therefore Vigil could not have been harmed by the deprivation of any such right. Maj. op. ¶ 25. I respectfully disagree with this articulation of a test for prejudice because in my view it (1) is inconsistent with the framework set forth in *Hagos v. People*, 2012 CO 63, ¶¶ 8–14, 288 P.3d 116, 118–20, for assessing whether an error in criminal proceedings requires reversal; (2) essentially eliminates any inquiry into prejudice in this context; and (3) results in an unlevel playing field.

¶73 After the court's decision today, when a defendant's challenge for cause is improperly denied, he or she must exercise a peremptory challenge to excuse the biased juror (or risk an appellate court's finding that he or she waived or invited error in allowing the biased juror to sit), and once this is done, the defendant apparently can establish prejudice only by showing that a second, independent error, namely, the seating of a different biased juror, also occurred. I perceive no basis for conflating the prejudice resulting from one error with the merits of a second, independent error. Indeed, as Vigil points out, if that were the test, then the initial error would become a moot point because a new trial would be required based on the second, independent error. I am aware of no other area of law in which prejudice is assessed in this manner.

11

¶74 Moreover, such an analysis seems contrary to the framework set forth in *Hagos*, ¶¶ 8–14, 288 P.3d at 118–20, for determining whether an error in criminal proceedings requires reversal. As pertinent here, in *Hagos*, we observed that we review preserved trial errors of constitutional dimension for constitutional harmless error, which requires reversal if there is a reasonable possibility that the error might have contributed to the conviction. *Id.* at ¶ 11, 288 P.3d at 119. We further stated that we review preserved, non-constitutional trial errors for harmless error, which requires reversal if the error substantially influenced the verdict or affected the fairness of the trial proceedings. *Id.* at ¶ 12, 288 P.3d at 119.

¶75 In both cases, we determine first whether an error occurred. If it did, then we must determine, pursuant to a case-specific analysis, whether, applying the proper standard, the error impacted the proceedings. We do not, however, assess prejudice by reference to a different and independent error.

¶76 In contrast to the foregoing circumstance in which a defendant's challenge for cause is erroneously denied (and in which proof of prejudice is nearly impossible), under the majority's reasoning, when a prosecutor's challenge for cause is improperly granted, then a defendant literally can never prove prejudice (absent, perhaps, evidence of bad faith). This is because, by definition, the improperly removed juror would never have sat in judgment of the case and therefore the trial court's erroneous ruling could not have deprived the defendant

of a fair and impartial jury. Maj. op. ¶ 25. Accordingly, contrary to the framework set forth in *Hagos*, we would never reach the question of whether such a trial error required reversal in a given case because, as a matter of law, it never would.

¶77 In light of the foregoing, the analytical regime for prejudice that the majority establishes in this case seems to result in a "heads I win, tails you lose" framework in favor of the prosecution. Under this framework, a defendant essentially can never establish prejudice, either from the erroneous denial of a defense challenge for cause or the erroneous grant of a prosecution challenge for cause.

¶78 Moreover, such a regime incentivizes prosecutors to challenge every debatable juror for cause because such challenges have no downside, given that erroneously granted challenges for cause have no consequences (and only a potential benefit) to the prosecution. This, in turn, effectively affords prosecutors a substantial voice in deciding the composition of a jury, while, at the same time, the majority's opinion makes clear that criminal defendants have no right to such a voice.

¶79 In my view, such a result creates an unlevel playing field. In addition, the majority's framework confirms Justice's Hood's observation in his partial dissenting opinion in *People v. Novotny*, 2014 CO 18, ¶ 31, 320 P.3d 1194, 1204 (Hood, J., concurring in part and dissenting in part), that *Novotny* has moved us from a regime of automatic reversal in cases involving erroneously denied

13

challenges for cause to a regime of automatic affirmance in favor of the prosecution. With respect, I cannot subscribe to such a regime, and I would hope that, in an appropriate case, we will revisit the issue of prejudice and adopt a test that will give defendants in cases like this a full and fair opportunity to seek to establish prejudice in accordance with the case-specific, error/prejudice framework set forth in *Hagos*.

### III. Conclusion

¶80 For the foregoing reasons, I would conclude that the trial court abused its discretion in denying Vigil's challenge for cause as to Juror C.A. and in granting the prosecution's challenge for cause as to Juror D.K. Because Juror C.A. then sat on the jury, I would conclude that Vigil is entitled to a new trial.

¶81 Accordingly, I would reverse the judgment of the division below, and therefore, I respectfully dissent.