20CA2072 Peo v Dearing 07-10-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 20CA2072
Adams County District Court No. 18CR375
Honorable Mark D. Warner, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Dreion Martise Dearing,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division I
Opinion by JUDGE HARRIS
J. Jones and Gomez, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 10, 2025

Philip J. Weiser, Attorney General, Paul Koehler, Senior Counsel, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Andrew C. Heher, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1    A jury found defendant, Dreion Martise Dearing, guilty of felony murder of a peace officer, reckless manslaughter, and first degree burglary.

¶ 2    On appeal, he raises multiple challenges to his convictions, primarily arguing that because the first degree burglary predicate to felony murder cannot stand, his felony murder conviction must be reversed. We reject that argument, as well as his other challenges, and therefore affirm the judgment.

## I.    Background

¶ 3    On an evening in January 2018, Dearing, his sixteen-year-old female cousin, and two or three others went to the apartment that Peter Aquino shared with his girlfriend and a roommate. Dearing's cousin had been involved in a sexual relationship with Aquino, a teacher at her high school. Earlier that day, Aquino's girlfriend had confronted the cousin in a nearby parking lot, and, while Aquino and some others looked on, the girlfriend assaulted the cousin.

¶ 4    When Aquino opened the apartment door that evening and stepped outside to the landing, he heard a female voice say, "that's him," and then the group began punching and kicking him.

Aquino's girlfriend followed him outside, and the group assaulted her too.

¶ 5    Two males and a female from the group entered Aquino's apartment. The third roommate and a friend, Raymondo Valenzuela, were inside. One of the males punched Valenzuela, knocking him unconscious. The female hit the third roommate in the face and the two males punched and "stomp[ed]" on him.

¶ 6    A neighbor who called 911 watched the group leave the apartment building and gather in the adjacent parking lot. She saw some of the group leave in a black SUV, but one man, whom she identified by his black hoodie and turquoise boxer shorts, was left behind. She saw him walk east into a residential neighborhood.

¶ 7    About ten minutes later, two police officers who had responded to a dispatch call about the assault saw a man, later identified as Dearing, in the neighborhood, standing in front of a house. When one of the officers attempted to contact him, Dearing ran. The two officers chased him into a backyard where Dearing and the officers exchanged gun fire. Dearing's shots hit one of the officers, killing him. While the second officer was giving aid, Dearing fled the scene.

¶ 8    Officers responding to the shooting tracked Dearing to a treehouse in a nearby yard.  They pulled him from the treehouse and arrested him.  He was wearing a black hoodie and turquoise boxer shorts.  He told police that he did not know how he got to the yard.  He said that he had been driving around with a friend, became intoxicated and blacked out, and woke up as he was pulled out of the treehouse.

¶ 9    The People charged Dearing with first degree murder (after deliberation), first degree felony murder,[1] first degree burglary, and third degree assault.[2]

¶ 10    After a lengthy trial, the jury returned a mixed verdict.  It acquitted Dearing of first degree murder (after deliberation) and instead convicted him of the lesser included offense of reckless manslaughter.  It found Dearing guilty of felony murder and first degree burglary but not guilty of third degree assault.

---

[1] In April 2021, the General Assembly reclassified felony murder as a class 2 felony.  Ch. 58, sec. 2, § 18-3-103, 2021 Colo. Sess. Laws 236.  The reclassification applies to offenses committed on or after September 15, 2021.  Sec. 6, 2021 Colo. Sess. Laws at 238.

[2] Dearing was also charged with possession of a weapon by a previous offender, but that charge was not submitted to the jury.

¶ 11    At sentencing, the court merged the manslaughter and first degree burglary convictions into the felony murder conviction. Then, for the felony murder conviction, it imposed the mandatory sentence of life in prison without the possibility of parole.

## II.    Judicial Bias

¶ 12    Dearing first contends that the trial judge's failure to recuse himself from the case resulted in structural error requiring reversal of his convictions.

### A.    Facts Related to the Disqualification Motions

¶ 13    An Adams County district court judge presided over Dearing's trial.  At the time, the judge's wife was a prosecutor in the office of the Jefferson County district attorney (JeffCo D.A.) and a supervisor in the unit that prosecutes sexual offenses.

¶ 14    About a year after Dearing's arrest, the JeffCo D.A.'s office filed a criminal complaint charging Aquino with sexual offenses arising out of his relationship with Dearing's underage cousin. Shortly thereafter, Dearing's lawyer issued a subpoena to the JeffCo D.A.'s office requesting essentially all the records relating to law enforcement's investigation of Aquino.

¶ 15    The JeffCo D.A.'s office moved to quash the subpoena. The next business day, without awaiting a response from defense counsel or holding a hearing, the trial judge granted the motion to quash in a one-sentence order.

¶ 16    Dearing's lawyers then moved to disqualify the judge, arguing that the judge's wife was "engaged in the case" by virtue of her employment with the JeffCo D.A.'s sexual offense unit and that the judge's handling of the motion to quash demonstrated bias or an appearance of bias. The trial judge concluded that the facts alleged did not support disqualification and denied the motion. Dearing petitioned for review in the supreme court under C.A.R. 21, reiterating his arguments for disqualification, but the supreme court denied review.

¶ 17    Six months later, defense counsel renewed their motion to disqualify the judge. The renewed motion alleged that the judge had exhibited bias by refusing to order pretrial disclosure of Aquino's offense-specific evaluation prepared in connection with his criminal case. The trial judge denied the renewed motion.

B. Discussion

¶ 18 "Basic to our system of justice is the principle that a judge must be free of all taint of bias and partiality." *People v. Jennings*, 2021 COA 112, ¶ 18. That principle is enforced through the Due Process Clause; section 16-6-201, C.R.S. 2024; Crim. P. 21(b); and Colorado Code of Judicial Conduct (C.J.C.) Rule 2.11(A). *See Sanders v. People*, 2024 CO 33, ¶¶ 27, 39, 45; *see also People v. Garcia*, 2024 CO 41M, ¶ 22.

¶ 19 We review de novo whether a trial judge was required to recuse himself from a case. *Richardson v. People*, 2020 CO 46, ¶ 22.

### 1. Due Process

¶ 20 "Due process guarantees 'an absence of actual bias' on the part of a judge." *Williams v. Pennsylvania*, 579 U.S. 1, 8 (2016) (quoting *In re Murchison*, 349 U.S. 133, 136 (1955)). Actual bias is bias that in all probability will prevent a judge from dealing fairly with a party. *Jennings*, ¶ 28.

¶ 21 A claim of actual bias generally focuses on the subjective motivations of the judge. *People in Interest of A.G.*, 262 P.3d 646, 651 (Colo. 2011). Under those circumstances, the party asserting actual bias must show that the judge had a "substantial bent of

6

mind against him." *People v. Drake*, 748 P.2d 1237, 1249 (Colo. 1988).

¶ 22    But the Due Process Clause also protects a defendant from an unacceptably high risk of judicial bias. When a defendant raises that kind of claim, courts apply an objective standard that asks not whether a judge harbors an actual subjective bias, but instead whether, "*objectively* speaking, 'the *probability* of actual bias . . . is too high to be constitutionally tolerable.'" *Sanders*, ¶ 29 (quoting *Rippo v. Baker*, 580 U.S. 285, 287 (2017)). Still, this standard does not require a judge to recuse himself "whenever a party can assert some objective probability of bias." *Id.* at ¶ 31. The risk of bias must be concrete; a risk that is "too remote and insubstantial does not violate the Due Process Clause." *Id.* at ¶ 32.

¶ 23    Though Dearing does not develop a specific due process argument, he generally contends that the judge's marital relationship with a supervising attorney in the JeffCo D.A.'s office — the office prosecuting a witness in Dearing's case — created too high a probability of bias. We disagree.

¶ 24    Dearing's motion did not allege that the judge's wife was one of the lawyers who prosecuted Aquino. But even if she was, the

allegations do not establish that she had an interest in the outcome of *Dearing's* case. Thus, as an objective matter, a judge presiding over Dearing's trial would not be faced with "a possible temptation" to forgo his neutrality for the sake of helping his wife. *Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 822 (1986) (citation omitted); *see also State v. Harrell*, 546 N.W.2d 115, 118 (Wis. 1996) (explaining that, because prosecutors do not "have the same type of interest in the outcome of a trial as does a member of a private law firm," it is unlikely that a judge's marital relationship with a prosecutor who is not directly involved in the case "would affect his . . . impartiality"); C.J.C. 2.11(A)(2)(c) (A judge should recuse himself if his spouse has an interest that could be "substantially affected by the proceeding.").

¶ 25    Even if the trial judge himself had been employed by the JeffCo D.A.'s office during some part of Aquino's prosecution, recusal would not have been required unless he worked directly on the case. *See People v. Julien*, 47 P.3d 1194, 1198 (Colo. 2002). Indeed, even if the trial judge had previously prosecuted *Dearing* in a different case, he would not necessarily have been disqualified from presiding over the trial. *See People v. Flockhart*, 2013 CO 42,

8

¶¶ 51-52 (judge who previously prosecuted defendant on unrelated charges was not required to recuse himself). It follows that the Due Process Clause does not require the trial judge's disqualification merely because his wife worked for the district attorney's office prosecuting a witness in Dearing's case.

¶ 26    To the extent Dearing argues that the trial judge was unlikely to be able to resolve the subpoena issues impartially because the average judge would feel compelled to rule in favor of his wife's employer in all circumstances, we reject that argument. In our view, any general interest the trial judge had in currying favor with his wife's colleagues is simply "too remote and insubstantial to violate the constitutional constraints." *Lavoie*, 475 U.S. at 826 (citation omitted); *see also Sanders*, ¶ 36 (risk of bias was "merely theoretical" where trial judge experienced criminal conduct similar to that presented in the criminal case over which she was presiding).

2.    Section 16-6-201 and Crim. P. 21(b)

¶ 27    Under both section 16-6-201(1)(a) and Crim. P. 21(b)(1)(I), a judge is disqualified if he is "related to . . . any attorney of record or attorney otherwise engaged in the case." Dearing says the judge's

9

wife was "engaged in the case" because, during the pretrial proceedings, a lawyer from the JeffCo D.A.'s office moved to quash the subpoena issued by Dearing's defense counsel.

¶ 28    "[A] government attorney is only 'engaged in the case' when [s]he has worked on it directly." *Smith v. Beckman*, 683 P.2d 1214, 1216 (Colo. App. 1984). The trial judge's wife did not work directly on Dearing's case: she did not enter an appearance, appear in court, file or sign any motions or other documents, or otherwise participate directly in any capacity in the case. That someone from her office filed a motion to quash a subpoena does not show that she worked directly on Dearing's case. Dearing alleged in his motion that the judge's wife was a supervisor in the special victims unit, but he did not allege — and the record does not support a finding — that the judge's wife supervised the filing of the motion to quash, which was signed by the chief deputy district attorney in the appellate division of the JeffCo D.A.'s office. Under these circumstances, the judge's wife was not "engaged in the case," and the judge was not required to recuse himself on this basis. *See id.* (judge's wife was not "engaged in" the defendant's misdemeanor case merely because she was a deputy district attorney in the same

10

county); *see also United States v. Vazquez-Botet*, 453 F. Supp. 2d 362, 365-67 (D.P.R. 2006) (judge's spouse was not "acting as a lawyer in the proceeding" where she had previously represented two potential witnesses); *Laurence v. State*, 394 So. 3d 241, 245-46 (Fla. Dist. Ct. App. 2024) (recusal was not required where the judge's wife was executive director of the state attorney's office prosecuting the defendant but did not participate in the case); *In re Disqualification of Carr*, 2004-Ohio-7357, ¶ 17 ("Where a judge is married to a prosecutor whose office is representing the state in a case before him or her, disqualification of the judge is not required, as long as the judge's spouse has neither entered an appearance in the case nor participated in the preparation or presentation of the case.").

### 3.    C.J.C. 2.11(A)

¶ 29    Under C.J.C. 2.11(A), a judge must recuse himself from "any proceeding in which [his] impartiality might reasonably be questioned."

¶ 30    Citing *Flockhart*, Dearing argues that even if the judge's wife was not engaged in his case, she was engaged in the related case against Aquino.  *See Flockhart*, ¶ 52 (A judge who, as a district

11

attorney, previously prosecuted the defendant is not disqualified from presiding over the defendant's trial "[a]bsent facts demonstrating some material relationship between the two proceedings, or facts showing that the [judge's] past prosecution [of the defendant] is relevant to the current case."). And he says that under *Beckman*, we must presume that the judge and his wife shared facts about the two cases, including the motion to quash, thereby giving rise to an appearance of impropriety. 683 P.2d at 1216.

¶ 31 We disagree that Dearing's allegations state "sufficient factual grounds" to "cause a reasonable, objective person, knowing all the relevant facts, to question the judge's impartiality." *United States v. Woodmore*, 135 F.4th 861, 873 (10th Cir. 2025) (citation omitted). As noted, the judge's wife did not work directly on Aquino's case and had nothing to do with the motion to quash the subpoena. *See State ex rel. Brown v. Dietrick*, 444 S.E.2d 47, 54 (W. Va. 1994) (no appearance of impropriety where judge issued a search warrant requested by the police department overseen by the judge's spouse because the spouse was not involved in requesting the warrant). And the two cases were only tangentially related; the outcome of

Aquino's case did not affect Dearing's case. *See People in Interest of C.Y.*, 2018 COA 50, ¶¶ 19-23 (finding a "material relationship or relevancy" between two cases when the facts of the former dependency and neglect case were used to prove mother's unfitness in the later dependency and neglect case). More to the point, the concern in *Flockhart* was that the judge himself, not the judge's spouse, had previously prosecuted the defendant. Even then, the division concluded that recusal was not required because the prior case and the current case, though both involving marijuana, were not sufficiently related. *Flockhart*, ¶ 53.

¶ 32    That leaves only the fact of the marital relationship. But *Beckman* is the only support for Dearing's position on this front, *see In re Jacobs*, 802 N.W.2d 748, 753 (Minn. 2011) (observing that the "vast weight of persuasive authority runs contrary to *Beckman*"), and *Beckman* has never been extended beyond its limited holding — that recusal is required if the judge's wife works for the district attorney's office *in the same county*. *Id.* Here, the judge's wife was an assistant district attorney in a different county.

¶ 33    Regardless, reversal of Dearing's convictions is not warranted. Our ethical rules, including C.J.C. 2.11, are "intended to protect

public confidence in the judiciary rather than to protect the individual rights of litigants." *Richardson*, ¶ 39 (quoting *A.G.*, 262 P.3d at 650). Thus, while the appearance of bias is a proper ground on which to base a motion to disqualify, *Sanders*, ¶ 51, "[o]nly when a judge was actually biased will we question the reliability of the proceeding's result," *People in Interest of A.P.*, 2022 CO 24, ¶ 29. In other words, "a trial judge's potential violation of [C.J.C. 2.11] does not mandate reversal." *Sanders*, ¶ 49 (quoting *Richardson*, ¶ 39).

¶ 34     In the absence of any showing of actual bias or prejudice, we discern no basis for reversing Dearing's convictions.

### III.   Challenges to the First Degree Burglary Conviction

#### A.     Procedural Background

##### 1.     Trial Court Proceedings

¶ 35     As noted, and as relevant to the appeal, Dearing was charged with felony murder, first degree burglary, and third degree assault. The felony murder count[3] alleged that Dearing, acting alone or with others, "committed or attempted to commit burglary" and, in the

---

[3] The People charged Dearing with two substantially identical counts of felony murder, the only difference being that one count alleged that the victim was a peace officer. We refer to the felony murder charges as a single count.

immediate flight therefrom, he caused the officer's death. The first degree burglary count (count 5) alleged that Dearing unlawfully entered a building or occupied structure "with the intent to commit the crime of assault" and, while effecting entry or while inside, he or another participant "assaulted or menaced" the four named occupants. The third degree assault count (count 7) alleged that Dearing knowingly or recklessly caused bodily injury "to the victim."

¶ 36     Dearing's counsel moved for a bill of particulars, arguing that the complaint and information failed to give Dearing sufficient notice of the charges against him. Counsel asked the prosecution to identify (1) the form of burglary serving as the predicate offense for the felony murder count as well as the other participants allegedly involved in the burglary; (2) the "factual and legal elements" of the ulterior crime for first degree burglary; and (3) the victim of the third degree assault count.

¶ 37     In response, the prosecution filed an amended information. The felony murder count identified the same predicate offense — burglary or attempted burglary. The first degree burglary count remained the same, except that it identified the victims of the ulterior crimes (assault and menacing) as Valenzuela and the third

15

roommate. The third degree assault count identified the victim as Valenzuela.

¶ 38 In a written order, the court granted the bill of particulars motion in part and denied it in part.

¶ 39 With respect to the felony murder charge, the court agreed that the prosecution had to give notice of the form of burglary it intended to prove as the predicate offense. Because count 5 charged first degree burglary, the court ruled that the "version [of burglary] . . . alleged in count 5" would constitute the predicate offense for felony murder unless the prosecution notified the defense that it would proceed differently. But the court disagreed with Dearing's counsel that the prosecution had to identify the other participants in the burglary, because its burden was only to prove that in committing the predicate offense, Dearing "was either acting alone or with one or more other co-participants."

¶ 40 With respect to the ulterior crime for first degree burglary, the court found that the amended information had sufficiently narrowed the factual and legal bases for assault and menacing: it identified Valenzuela and the third roommate as the victims of the assault or menacing in the burglary count and identified Valenzuela

16

as the victim in the stand-alone third degree assault count. Based on those amendments, the court inferred that the prosecution intended to "rely on the assault alleged in Count 7 to satisfy the assault element" of the ulterior crime and intended to rely on "simple menacing" as the other charged ulterior crime. If the prosecution intended to proceed differently, it had to notify the defense.

¶ 41　A week later, the prosecution filed a notice advising that it intended to rely on both first and second degree burglary (and attempt) as the predicate offenses for felony murder. The prosecution did not file any notice regarding the ulterior crimes, but it later abandoned menacing as an alternative and elected to rely only on third degree assault as the ulterior crime for burglary.

¶ 42　The case proceeded to a six-week jury trial. During trial, the parties and the court conferred multiple times about the jury instructions.

¶ 43　One dispute centered on whether the court should give a complicity instruction with respect to the burglary predicate offense. The defense objected on the sole ground that the evidence did not support giving the instruction. The court overruled the

objection, concluding that the jury "could convict under a complicity theory."

¶ 44 Another dispute involved whether the prosecution had to elect the acts supporting the predicate burglary offenses, including the ulterior crime, and, if not, whether the court had to give a unanimity instruction. The court declined to require the prosecution to elect the "specific acts" that Dearing or his "alleged accomplices or complicitors may have engaged in." The court did not give the pattern unanimity instruction, but it did instruct the jurors that "[t]he verdict for each charge . . . must be unanimous. In other words, all of you must agree to all parts of it."

¶ 45 The jury received a series of elemental instructions. The felony murder instruction generally directed the jury that to convict Dearing of that offense, it had to find beyond a reasonable doubt that he (acting alone or with one or more persons) "committed or attempted to commit the crime of First Degree Burglary . . . or Second Degree Burglary, as defined in Instructions 18 and 19," and that in the course of or in furtherance of the immediate flight therefrom, Dearing caused the officer's death.

¶ 46    Instruction No. 18, in turn, set forth the elements of first degree burglary as follows:

> 1. That Mr. Dearing, the defendant,
> 2. in the State of Colorado, at or about the date and place charged,
> 3. knowingly,
> 4. entered unlawfully, or remained unlawfully after a lawful or unlawful entry,
> 5. in a building or occupied structure,
> 6. with intent,
> 7. to commit therein the crime of Assault in the Third Degree, as defined in Instruction[] No. 20 against any person, and
> 8. in effecting entry or while in the building or occupied structure or in immediate flight from the building or occupied structure,
> 9. the defendant or another participant in the crime committed the crime of Assault in the Third Degree.

¶ 47    Instruction No. 20 explained that to find Dearing guilty of third degree assault, as alleged in count 7, the jury had to find beyond a reasonable doubt that he knowingly or recklessly "caused bodily injury to another person, Raymundo Valenzuela."

¶ 48    Finally, the complicity instruction told the jury that it could find Dearing guilty of first degree burglary as a complicitor if it determined that one of the coparticipants entered the apartment with the intent to commit assault against any person and "Dearing

or another participant in the crime committed the crime of Assault in the Third Degree."

¶ 49 As noted, the jury found Dearing guilty of felony murder and first degree burglary (count 5) but not guilty of third degree assault (count 7).

## 2. Issues on Appeal

¶ 50 On appeal, Dearing challenges his first degree burglary conviction on five grounds:

- he cannot be guilty of first degree burglary because the jury acquitted him of the burglary count's ulterior crime — third degree assault;

- in the alternative, the burglary instruction constructively amended, or caused a prejudicial simple variance from, the charging document, as narrowed by the court's bill of particulars order;

- the court erred by neither requiring an election nor giving a unanimity instruction;

- the court erred by failing to give a self-defense instruction on the ulterior crime of third degree assault; and

- the evidence was insufficient to support the first degree burglary conviction.

¶ 51     Dearing contends that because the first degree burglary conviction is invalid, his felony murder conviction must be reversed.

## B.     Inconsistent Verdicts

¶ 52     Dearing says that because the jury acquitted him of third degree assault (count 7), the prosecution failed to prove the ulterior crime for the predicate offense of first degree burglary, and, therefore, it necessarily failed to prove felony murder.

¶ 53     We agree with the People that this assertion amounts to an inconsistent verdict claim.  Whether verdicts are logically or legally inconsistent is a question of law that we review de novo.  *People v. Delgado*, 2019 CO 82, ¶ 13.

### 1.     Legal Principles

¶ 54     To be convicted of felony murder, a defendant must have committed or attempted to commit the charged predicate offense. *Doubleday v. People*, 2016 CO 3, ¶ 22.  Accordingly, the prosecution must prove beyond a reasonable doubt all the elements of the predicate offense.  *Id.* at ¶ 26.

¶ 55    While a verdict in a criminal case should be certain and devoid

of ambiguity, *People v. Brooks*, 2020 COA 25, ¶ 11, consistency in

the verdict is not generally necessary, *United States v. Powell*, 469

U.S. 57, 62 (1984).  Only when verdicts for two counts (or a

response to an interrogatory and a verdict) are mutually exclusive

will the inconsistency result in an infirm verdict.  *See Shockey*,

¶¶ 40-42.

¶ 56    We have a duty to "reconcile and uphold verdicts if the

evidence so permits." *People v. Scearce*, 87 P.3d 228, 232 (Colo.

App. 2003).  Thus, "[i]f the verdicts are consistent in any view of the

evidence, the presumption is that the jury took that view."  *Id.*

### 2.    Analysis

¶ 57    The verdicts are not inconsistent.  The third degree assault

(count 7) instruction allowed the jury to return a guilty verdict only

if it found that Dearing assaulted Valenzuela.  But the first degree

burglary (count 5) instruction allowed the jury to return a guilty

verdict if it found that Dearing "or another participant in the

[burglary]" committed third degree assault.

¶ 58    Thus, the jury could have found that Dearing entered the

apartment with the intent to commit an assault and one of his

coparticipants assaulted Valenzuela.  In that instance, Dearing would be guilty of first degree burglary but not guilty of third degree assault as charged in count 7.

## C.  Variance

¶ 59   Dearing's counter to the inconsistent verdict analysis is that the jury instructions should have precluded an outcome in which he was found guilty of first degree burglary but not guilty of the separate third degree assault charge.  He says that the court's bill of particulars order required the prosecution to prove the third degree assault *as charged in count 7* as the ulterior crime for first degree burglary.  Therefore, he argues, if the jury could convict him of first degree burglary even though he did not assault Valenzuela, then the jury instructions constructively amended, or the prosecution's proof prejudicially varied from, the burglary charge as narrowed by the court's bill of particulars order.

¶ 60   According to Dearing, the instructions created a variance in two ways.  First, element 9 of the first degree burglary instruction expanded the number of possible victims of third degree assault to include any of the four occupants of the apartment.  Second, element 9 and the complicity instructions expanded the number of

possible perpetrators of the assault to include any of the coparticipants.

### 1. Legal Principles and Standard of Review

¶ 61    A defendant has a constitutional right to notice of the charges against him. *People v. Martinez*, 2024 COA 34, ¶ 21. Thus, an impermissible variance may arise when the charge in the charging document varies from the charge of which the defendant is convicted. *People v. Deutsch*, 2020 COA 114, ¶ 25.

¶ 62    There are two types of variances: a constructive amendment and a simple variance. "A constructive amendment occurs when a jury instruction 'changes an essential element of the charged offense and thereby alters the substance of the charging instrument.'" *Bock v. People*, 2024 CO 61, ¶ 14 (quoting *People v. Rediger*, 2018 CO 32, ¶ 48); *see also Esquivel-Castillo v. People*, 2016 CO 7, ¶ 13 (A constructive amendment occurs when jury instructions permit the jury to convict the defendant of an offense "that is substantively different from any charged in the information."). A simple variance occurs when the charging terms are unchanged, but the evidence at trial proves facts materially

different from those alleged in the charging document. *Deutsch*, ¶ 25.

¶ 63 A bill of particulars "is intended to define the charged offense more specifically" when the charging document, though sufficient to give notice of the charges, is nonetheless too indefinite to provide the defendant a fair opportunity to "properly prepare his defense." *Erickson v. People*, 951 P.2d 919, 921 (Colo. 1998) (citation omitted). To this end, the court may order the prosecution to file a bill of particulars, *see* Crim. P. 7(g), or, as in this case, clarify the charges in an order.

¶ 64 Variance principles apply equally to a bill of particulars. In other words, the defendant can only be convicted of the charges contained in the charging document as clarified in a bill of particulars. *See, e.g., People v. Vigil*, 2015 COA 88M, ¶ 31 (assuming that variance jurisprudence applies to a bill of particulars), *aff'd*, 2019 CO 105; *United States v. Kaplan*, 490 F.3d 110, 129 (2d Cir. 2007) (explaining that a variance occurs when the evidence differs from the facts alleged "in the indictment or bill of particulars"); *United States v. Adamson*, 291 F.3d 606, 616 (9th Cir. 2002) (concluding that a prejudicial variance occurred when the

25

evidence at trial differed from the facts represented at a hearing on the motion for a bill of particulars); *see also* 5 Wayne R. LaFave et al., *Criminal Procedure* § 19.4(a), Westlaw (4th ed. database updated Nov. 2024) ("The rules governing variance between proof and pleading apply to the bill of particulars just as they do to an indictment or information.").

¶ 65    We review de novo whether a constructive amendment or simple variance occurred.  *See People v. Carter*, 2021 COA 29, ¶ 35. Dearing did not preserve this claim.[4]  His attorney objected to the number of possible paths to a guilty verdict on the burglary charge (i.e., multiple perpetrators and multiple victims), but counsel did not alert the trial court to an alleged variance between the bill of particulars order and the jury instructions.  And, as noted, counsel objected to the complicity instructions based on a lack of evidence to support them, not on variance grounds.  Therefore, even if a variance occurred, we will not reverse unless the error was plain.

---

[4] We are somewhat hindered in determining preservation because Dearing's brief does not contain "under a separate heading placed before the discussion of each issue, [a] statement[] . . . whether the issue was preserved, and if preserved, the precise location in the record where the issue was raised and where the court ruled." C.A.R. 28(a)(7)(A).

*See Bock*, ¶ 23. "An error is plain only if it is obvious, substantial, and so undermined the trial's fundamental fairness as to cast doubts on the reliability of the conviction." *Id.* at ¶ 24.

### 2. Analysis

¶ 66 Dearing's variance argument rests on a misreading of the record. First, the first degree burglary instruction did not amend the bill of particulars order by expanding the number of possible victims for the ulterior crime of assault. For a conviction, element 9 of the first degree burglary instruction required the jury to find that during entry or while inside the apartment, Dearing "or another participant" committed "the crime of Assault in the Third Degree." The crime of assault in the third degree was defined in Instruction No. 20, which identified Valenzuela as the victim. To expand the number of possible assault victims, element 9 would have had to include language that the crime of third degree assault could be committed "against any person." Indeed, that is what element 7 said — that Dearing had to enter the apartment with the intent "to commit therein the crime of Assault in the Third Degree, as defined in Instruction[] No. 20 against any person." The absence of the "against any person" language in element 9 meant the prosecution

27

had to prove that the ulterior crime of assault was committed against Valenzuela. Thus, no amendment occurred with respect to the assault victim.

¶ 67 Second, neither the first degree burglary instruction nor the complicity instructions amended the bill of particulars order to expand the possible perpetrators of the assault. The bill of particulars order did not require the prosecution to prove that Dearing himself committed the ulterior crime of assault. In considering Dearing's bill of particulars motion, the court found that the prosecution's amended complaint and information cured any lack of specificity in the original complaint because the first degree burglary count, as amended, specified the ulterior crimes as assault and menacing and identified the victims as Valenzuela and the third roommate, while the separate third degree assault count identified Valenzuela as the victim. Thus, the court concluded that for the ulterior crime of assault, the prosecution intended to prove third degree assault against Valenzuela. But the amended first degree burglary count charged that Dearing "or a participant" committed the ulterior crime — language that, contrary to Dearing's assertion on appeal, the court neither referenced nor limited. In

other words, when the court said that it would "infer that the People will rely on the assault alleged in Count 7 to satisfy the assault element of First Degree Burglary," it was referring to the fact that the amended information named *the victim* for count 7. The court could not have meant that the prosecution was limited to proving that Dearing was *the perpetrator* because the amended information did not specifically allege the perpetrator's identity, and the court found that, as amended, the information "satisf[ied] the perceived deficienc[ies]."

¶ 68      Accordingly, we discern no constructive amendment of the charges, as narrowed through the bill of particulars order.

¶ 69      For the same reason, we reject Dearing's simple variance argument. He says that the amended first degree burglary charge, circumscribed by the bill of particulars order, alleged that he entered the apartment and assaulted Valenzuela, but instead, the prosecution presented evidence that Valenzuela was assaulted by someone else.

¶ 70      But as we have explained, the amended first degree burglary charge (even as limited by the bill of particulars order) did not allege that Dearing assaulted Valenzuela; it alleged that Dearing "or a

participant" assaulted Valenzuela. Therefore, the evidence presented at trial — that one of the two males who entered the apartment assaulted Valenzuela — did not prove facts materially different from those alleged in the charging document.

¶ 71    But even if the evidence had varied from the facts alleged in the amended information, the proof on which the first degree burglary conviction is based "corresponds to an offense that was clearly set out in the charging instrument." *Campbell v. People*, 2020 CO 49, ¶ 45. Under those circumstances, reversal is not required unless Dearing demonstrates prejudice. *Id.* He says that had he known the prosecution could prove first degree burglary by showing that a coparticipant committed the ulterior crime, he would have "approached and defended against the State's case far differently." That conclusory argument is unpersuasive, though, because the undisputed evidence showed that *someone* in Dearing's group assaulted Valenzuela; the only question was who. So it is not clear what alternative approach Dearing would have taken had the amended information identified the perpetrator of the assault.

¶ 72    Regardless, any error in instructing on first degree burglary is not substantial, and therefore not plain, because the jury was

properly instructed on second degree burglary as an alternative predicate felony for felony murder. Contrary to Dearing's recollection of the record, on January 30, 2020, one week after the court issued the bill of particulars order and eight months before trial, the prosecution provided notice of its intent to also rely on the lesser included offense of second degree burglary as the predicate felony. *See Esquivel-Castillo*, ¶ 20 (a charge of "kidnapping" as the predicate felony for felony murder includes every version of kidnapping, regardless of whether a specific version is charged in a separate count of the information). Thus, the felony murder instruction allowed the jury to find Dearing guilty of felony murder if the prosecution proved beyond a reasonable doubt that, among other elements, Dearing "acting alone or with one or more persons" committed first degree burglary "or Second Degree Burglary."

¶ 73 Dearing does not challenge the second degree burglary instruction. And because second degree burglary does not require proof of an ulterior crime, *see* § 18-4-203(1), C.R.S. 2024, the instruction informed the jury that the elements of the offense were that Dearing knowingly entered the apartment unlawfully "with intent" to commit third degree assault "as defined in [the third

31

degree assault instruction]," but not that he or another person actually committed that crime. For reasons that we explain below, the evidence was sufficient to support a finding that Dearing committed first degree burglary. Thus, the evidence necessarily supported a finding that he committed second degree burglary. *See Lucero v. People*, 2012 CO 7, ¶ 29 ("Second degree burglary is a lesser included offense of first degree burglary.") (citation omitted).

¶ 74     The alleged amendment affected only element 9 of the first degree burglary instruction regarding the ulterior crime of assault. Consequently, even if the instruction impermissibly expanded the number of possible perpetrators of the assault from one (Dearing) to three (Dearing or two others who entered the apartment), such that first degree burglary cannot constitute the predicate felony, the felony murder conviction is nonetheless supported by a second degree burglary predicate felony.[5]

¶ 75     In his reply brief, Dearing says that if the first degree burglary conviction is a product of a constructively amended charge, any

---

[5] Dearing did not sustain a conviction for first degree burglary, as that conviction merged into the felony murder conviction. *See People v. Wood*, 2019 CO 7, ¶ 29 (merger has the same effect as vacating the merged conviction).

lesser offense is "not [a] truly lesser cognizable offense[]," particularly because "the jury had no moment to consider and decide" the elements of second degree burglary. The first part of that argument is a bald legal proposition unsupported by any authority, *see People v. Houser*, 2020 COA 128, ¶ 24, and the second part is contradicted by the record. We cannot say, then, that any error in element 9 of the first degree burglary instruction amounted to plain error.

## D. Unanimity

¶ 76     Dearing contends that the court's refusal to give a unanimity instruction permitted the jury to disagree on the identity of the victim and the perpetrator of the burglary count's ulterior crime and therefore render a nonunanimous verdict on the first degree burglary charge and, consequently, the felony murder charge.

### 1. Legal Principles and Standard of Review

¶ 77     In criminal cases, "a jury verdict to convict must be unanimous." *People v. Mosely*, 2021 CO 41, ¶ 14. However, unanimity in a verdict is required "only with respect to the ultimate issue of the defendant's guilt or innocence of the crime charged and not with respect to alternative means by which the crime was

33

committed." *People v. Archuleta*, 2020 CO 63M, ¶ 20 (citation omitted). Thus, jurors must unanimously agree only on the elements of the charged offense, not on the "several possible sets of underlying brute facts [that] make up a particular element." *Id.* (quoting *Richardson v. United States*, 526 U.S. 813, 817 (1999)); *see also People v. Roberts-Bicking*, 2021 COA 12, ¶ 46 ("[T]he jury is not required to unanimously agree on the evidence or theory by which a particular element is established.") (citation omitted). "In short, different theories of liability or guilt are tolerated so long as the prosecution presented sufficient proof for at least one theory." *Mosely*, ¶ 16.

¶ 78    When, however, the prosecution presents evidence of multiple discrete acts, any one of which would constitute the offense charged, and there is a reasonable likelihood that jurors will disagree regarding which act was committed, the court must either give a modified unanimity instruction or require the prosecution to elect the transaction on which it is relying for a conviction. *Archuleta*, ¶¶ 21-22. The requirement of a modified unanimity instruction or an election "assures that a conviction does not result from some members of the jury finding the defendant guilty of one

act, while others convict based on a different act." *People v. Rivera*, 56 P.3d 1155, 1160 (Colo. App. 2002).

¶ 79 We review de novo whether a court erred by failing to give a unanimity instruction or require an election. *People v. Ryan*, 2022 COA 136, ¶ 15.

### 2. Analysis

¶ 80 We begin with Dearing's argument that the jury might have disagreed as to the identity of the victim of the ulterior crime. The first degree burglary instruction informed the jury that to convict, it had to find that the prosecution proved element 9 — that "the defendant or another participant in the crime committed the crime of Assault in the Third Degree" — beyond a reasonable doubt. The same instruction referenced Instruction No. 20, the elemental instruction for third degree assault. That instruction named Valenzuela as the victim. Thus, as we have explained, the jury instructions required the prosecution to prove that the victim of the ulterior crime for burglary was Valenzuela. As a result, neither an additional unanimity instruction nor an election regarding the victim was necessary.

¶ 81    Nor was a unanimity instruction necessary regarding the identity of the perpetrator. To find Dearing guilty of first degree burglary, the jury had to unanimously agree that the prosecution proved element 9 — that Dearing or "another participant" assaulted Valenzuela. *See Archuleta,* ¶ 20. A unanimity instruction is required only if the prosecution presents evidence of multiple acts that could constitute the charged offense, and here, the assault comprised a single act: a man entered the apartment, approached Valenzuela, and punched him in the face, knocking him unconscious. *See People v. Wester-Gravelle,* 2020 CO 64, ¶¶ 31-32 (when the evidence shows a single act or transaction, a unanimity instruction is not required). In other words, Dearing is guilty of first degree burglary regardless of who punched Valenzuela as long as the prosecution proved, along with the other elements, that he or another participant committed the act. *See* § 18-4-202(1), C.R.S. 2024 (a person commits first degree burglary if he enters a building unlawfully with the intent to commit a crime and he "or another participant in the crime" assaults or menaces any person). The identity of the "[]other participant" is not a sub-element of first degree burglary on which the jury must unanimously agree.

¶ 82    That the jury could have found Dearing guilty of first degree burglary as a complicitor does not change the result. For one thing, the jury need not unanimously agree that the defendant acted as a principal or a complicitor. *See People v. Hall*, 60 P.3d 728, 730-31 (Colo. App. 2002). But also, element 9 was the same under the principal and complicity first degree burglary instructions. And, as we have explained, to find that the prosecution proved element 9, the jury had to unanimously agree only that Dearing or another participant committed the assault.

¶ 83    Regardless, Dearing's unanimity argument applies only to the ulterior crime for first degree burglary. And because the evidence was necessarily sufficient to support a finding that Dearing committed second degree burglary, which does not contain an ulterior crime element, any error in failing to give a unanimity instruction was harmless on this basis too.

¶ 84    In light of our analysis, Dearing's reliance on *People v. Simmons*, 973 P.2d 627 (Colo. App. 1998), misses the mark. In *Simmons*, the defendant was charged with menacing a named victim, but at trial, the jury was instructed that it could return a guilty verdict if it found that the defendant had menaced "another

person." *Id.* at 628. And because the evidence supported a finding that the defendant menaced two people, the division concluded that the jury's guilty verdict might have been nonunanimous. *Id.* at 630. But here, the charges (as narrowed by the bill of particulars order) *and* element 9 of the first degree burglary instruction required the jury to find that Dearing or another participant committed an assault against Valenzuela. Unanimity was not required on the means by which the assault was committed because the prosecution presented sufficient evidence to establish one means for committing the ulterior crime. *See Mosely*, ¶¶ 16, 19.

E.   Self-Defense Instruction for the Ulterior Crime of Assault

¶ 85   Dearing argues that the court reversibly erred by declining to instruct the jury that to prove the ulterior crime of third degree assault, the prosecution had to prove that Dearing was not acting in self-defense.

¶ 86   We review de novo whether there was sufficient evidence presented to support a self-defense jury instruction, *see People v. Newell*, 2017 COA 27, ¶ 19, and we agree with the trial court that the evidence did not support such an instruction. There was no evidence that Valenzuela, who was assaulted inside the apartment,

used or threatened the imminent use of unlawful physical force against Dearing or any other participant in the burglary. *See* § 18-1-704(1), C.R.S. 2024 ("[A] person is justified in using physical force upon another person in order to defend himself or a third person from what he reasonably believes to be the use or imminent use of unlawful physical force by that other person . . . ."); *People v. Coahran*, 2019 COA 6, ¶ 16 (a defendant must present "some credible evidence" to support a self-defense instruction) (citation omitted).

## F. Sufficiency of the Evidence

¶ 87 Finally, Dearing argues that, in any event, the evidence was insufficient to support the jury's finding that he committed burglary as the predicate for felony murder. He says the prosecution failed to prove that he entered the apartment and did so with an intent to commit third degree assault, and that the court's response to a jury question relieved the prosecution of its burden to prove all the elements of the crime.

### 1. Standard of Review

¶ 88 On a challenge to the sufficiency of the evidence, we review the record de novo to determine whether the evidence, when viewed as

a whole and in the light most favorable to the prosecution, is sufficient to support a conclusion by a rational jury that the defendant is guilty of the charge beyond a reasonable doubt. *People v. Market*, 2020 COA 90, ¶ 47.

¶ 89 We examine both direct and circumstantial evidence, and we give the prosecution the benefit of every reasonable inference that could fairly be drawn from the evidence. *People v. Perez*, 2016 CO 12, ¶¶ 24-25. "If there is evidence upon which one may reasonably infer an element of the crime, the evidence is sufficient to sustain that element." *People v. Chase*, 2013 COA 27, ¶ 50.

## 2. Analysis

¶ 90 At trial, the prosecution presented the following evidence to prove that Dearing entered the apartment with the intent to commit an assault:

- Hours after Aquino's girlfriend beat up Dearing's cousin in front of Aquino and his friends, four or five people, including Dearing's cousin, showed up at Aquino's apartment. The group assaulted Aquino and his girlfriend outside the apartment, on the landing. Then, Dearing's cousin told the

group "to attack [Valenzuela and the third roommate] as well,"
who were still inside the apartment.

- Two males and a female from the group "stormed inside" the
apartment.

- One of the men punched Valenzuela and knocked him
unconscious.

- Dearing's cousin hit the third roommate in the face, then the
two males knocked him to the ground and "stomped" him.

- A set of car keys was found in the apartment right after the
assault. The keys, which did not belong to any of the
apartment's occupants, were for a Kia that was parked in the
parking lot adjacent to Aquino's apartment building.
Dearing's identification, his resume, and other items
connected to him were collected from inside the car. The
prosecution introduced evidence that Dearing was driving the
car earlier that day.

- The neighbor who called 911 testified that she saw a man who
had been involved in the assault walk away from the
apartment building and head south on an adjacent street.
She described him as a Black man wearing a dark hoodie and

turquoise boxer shorts. The prosecution introduced video from a security camera that corroborated the neighbor's testimony.

- Dearing, a Black man, was arrested in the adjacent neighborhood, wearing a dark hoodie and turquoise boxer shorts.

- Valenzuela testified that his phone was in his pocket when he was assaulted. Police found the phone on the ground across the street from Aquino's apartment building, three or four blocks from the scene of the shooting.

¶ 91 From this evidence, the jury could reasonably conclude that Dearing went to Aquino's apartment with the intent to retaliate against Aquino and his friends for the sexual and physical assault of the cousin, and that he was one of the men who entered the apartment. The temporal proximity between the assault outside the door and the assault inside, along with the cousin's instruction to "get" Valenzuela and the third roommate, provided ample basis for the jury to conclude that Dearing entered the apartment with the intent to commit an assault once inside. *See People v. Ruiz*, 224 N.Y.S.3d 396, 397 (App. Div. 2025) (the temporal proximity between

the defendant's unlawful entry and the taking of a cell phone supported a finding that he entered with intent to commit a crime). True, as Dearing points out, "no one testified that . . . [he] intended to assault any person." But "[i]n a burglary case, the element of intent to commit a crime within a building entered unlawfully must normally be proved by circumstantial evidence since it is rare that a perpetrator will openly declare his intent to commit a crime." *People v. Caraballo*, 526 N.Y.S.2d 538, 538 (App. Div. 1988); *see also People v. Phillips*, 219 P.3d 798, 800 (Colo. App. 2009) ("An actor's state of mind is normally not subject to direct proof and must be inferred from his or her actions and the circumstances surrounding the occurrence.").

¶ 92 As for Dearing's argument that the evidence did not show that he committed an assault as a principal or a complicitor, for the reasons we have explained, the jury was not required to make that finding in order to return a guilty verdict. The jury had to find only that Dearing *or another participant* assaulted Valenzuela, and the evidence was uncontested that someone who entered the apartment punched Valenzuela.

¶ 93    We also reject Dearing's related argument that the court's response to a jury question allowed a guilty verdict on first degree burglary without proof that Dearing or a participant unlawfully entered the apartment to commit the assault.

¶ 94    During deliberations, the jury submitted the following question: "Is the front porch of a condo/apartment considered to be part of an occupied structure?"  Over both defense counsel's and the prosecutor's objections, the court responded, "The Court will refer the jury to [the occupied structure] definition [in the jury instructions].  If the porch of the apartment or condo is not enclosed to restrict or prevent entry by others and other occupants of the building, it is not part of an 'occupied structure.'"

¶ 95    Even if we assume that the court's response was erroneous, any error was surely harmless.  The jury instructions defined "occupied structure" in relevant part as "any area, place, facility or enclosure which, for particular purposes, may be used by persons . . . upon occasion, whether or not it is a 'building.'"

¶ 96    The court's response effectively narrowed the definition to a facility, enclosure, or building where entry "by others and other occupants of the building" is restricted.  Thus, the response did not

44

expand the bases on which the jury could find guilt, as Dearing alleges; it limited the bases, and therefore it "inure[d] to [Dearing's] benefit." *People v. Lopez*, 2015 COA 45, ¶ 46 (instruction that required jury to consider additional factors when such factors were irrelevant effectively added an element to the offense and therefore any error benefitted the defendant and was harmless).

¶ 97 And there is no reasonable probability that, under the court's narrower definition, the jury found that the exterior landing was an "occupied structure." *See People v. Snelling*, 2022 COA 116M, ¶ 15 (Any error in the court's response to a jury question "must be disregarded as harmless unless there is a reasonable probability that the error contributed to the defendant's conviction."). There was no evidence presented that entry to the apartment building's exterior landing was restricted. Indeed, video showed Dearing's group arrive at and leave from Aquino's apartment by accessing the landing and the exterior stairs to the parking lot.

IV. Independent Challenges to the Felony Murder Conviction

¶ 98 Dearing contends that, even setting aside the alleged errors relating to the predicate felony, the felony murder conviction must be reversed because the jury was improperly instructed and the

evidence was insufficient to support the "immediate flight" element of that crime.

## A. Jury Instruction

¶ 99 It was undisputed that the officer was not killed during the commission of the burglary. Therefore, the prosecution had to prove, as an element of felony murder, that Dearing killed the officer "in the course of or in furtherance of the . . . immediate flight" from the burglary. § 18-3-102(1)(b), C.R.S. 2018.

¶ 100 The supreme court has held that the plain language of the immediate flight provision of the felony murder statute establishes four limitations on criminal liability. *Auman v. People*, 109 P.3d 647, 656 (Colo. 2005). First, the flight must be "immediate," which requires a "close temporal connection" between the predicate felony, the flight, and the resulting death. *Id.* Second, the word "flight" limits liability to deaths that occur while the defendant is fleeing from a felony. *Id.* Third, the death must occur "in the course of" or "in furtherance of" immediate flight, meaning the death is caused during the defendant's immediate flight or while he is acting to promote immediate flight from the felony. *Id.* And fourth, the flight

must be from the predicate felony, not from "some other episode or event." *Id.*

¶ 101 Dearing requested that the court supplement the elemental instruction for felony murder with an instruction setting out the "four limitations on liability" from *Auman.*[6] The trial court declined

---

[6] The tendered instruction provided,

> There are four limitations on liability for felony murder when a death occurs during flight from the predicate felony.
>
> First, the flight from the predicate felony, the burglary, must be "immediate," which requires a close temporal connection between the predicate felony, the flight, and the resulting death. . . .
>
> Second, the word "flight" limits felony-murder liability in such cases to those circumstances in which death is caused while a participant is escaping or running away from the predicate felony.
>
> Third, the death must occur either "in the course of" or "in furtherance of" immediate flight, so that a defendant commits felony murder only if a death is caused during a participant's immediate flight or while a person is acting to promote immediate flight from the predicate felony.
>
> Fourth, the immediate flight must be "therefrom," indicating that the flight must be

47

to give Dearing's proposed instruction but agreed to give a similar one "to make it a little more clear what things the jury may consider with respect to immediate flight." The court's supplemental instruction provided,

> For the [felony murder charge], the jury must consider whether the defendant . . . was in the course [of] or [in] furtherance of the immediate flight from the charged [first or second degree burglary].
>
> The jury should consider the time that elapsed between the Burglary . . . and the death, whether the defendant was fleeing from the Burglary . . . , whether the defendant was acting to promote or facilitate his flight from the burglary . . . , and whether he was fleeing from the Burglary . . . as opposed to fleeing from some other episode or event.

### 1.    Legal Principles and Standard of Review

¶ 102    The trial court has a duty to correctly instruct the jury on all matters of law. *Roberts-Bicking*, ¶ 17. An elemental instruction should substantially track the language of the statute describing the crime, but otherwise, trial courts have broad discretion to

---

> from the predicate felony, burglary, as opposed to being from some other episode or event.

determine the form and style of jury instructions. *People v. Salazar*, 2023 COA 102, ¶ 9.

¶ 103   We review de novo whether jury instructions adequately informed the jury of the governing law. *Garcia v. People*, 2023 CO 30, ¶ 9. If they did, we review the court's decision whether to give a supplemental instruction, and the form of that instruction, for an abuse of discretion. *Day v. Johnson*, 255 P.3d 1064, 1067 (Colo. 2011). A trial court abuses its discretion if its ruling is manifestly arbitrary, unreasonable, or unfair, or is based on a misapplication of the law. *People v. Trujillo*, 2025 COA 22, ¶ 24.

## 2.   Analysis

¶ 104   Dearing contends that the court had a duty to give his tendered "immediate flight" instruction, and that the court's modified version, which referred to "considerations" rather than "requirements," lowered the prosecution's burden of proof.

¶ 105   But under *Auman*, the elemental instruction is sufficient to inform a jury of the limits of liability, so long as the instruction tracks the language of the felony murder statute. The court's elemental instruction for felony murder informed the jury that to convict, it had to find that Dearing caused the officer's death in the

49

course of or in furtherance of the burglary or "in the course or furtherance of the immediate flight therefrom." Dearing does not challenge the accuracy of the elemental instruction.

¶ 106    In *Auman,* the trial court's felony murder instruction informed the jury that the defendant could be found guilty if she caused the victim's death "in the course of or in the furtherance of Burglary, or in the immediate flight therefrom." 109 P.3d at 659. The defendant argued that the absence of the phrase "in the course of or in the furtherance of" before "immediate flight" constituted reversible error because the omission allowed the jury to convict without finding the required causal connection "between the felony, flight, and death." *Id.* at 660. The supreme court disagreed. It reasoned that the "in the immediate flight therefrom" language "expressly contained three of the four limitations included in the felony-murder statute": the phrase required an "immediate" connection between the flight and the victim's death; it required that the defendant or a participant be in "flight" when the death was caused; and it required the jury to find that the immediate flight was "therefrom" — i.e., from the predicate felony rather than some other event. *Id.* And, as to the fourth limitation, the failure to include the "in furtherance of"

language was not prejudicial, the court said, because that language merely provides an alternative theory of liability. *Id.* at 661.

¶ 107 The upshot of *Auman* is that a supplemental instruction setting forth the four limits of liability is unnecessary, as the elemental instruction sufficiently advises the jury of those limitations. *See id.* at 660 ("[T]he immediate flight language in the instruction was well within the comprehension of the jury."); *see also Garcia*, 2023 CO 30, ¶ 20 ("[W]hen 'a term, word, or phrase in a jury instruction is one with which reasonable persons . . . would be familiar, and its meaning is not so technical or mysterious as to create confusion in jurors' minds as to its meaning, an instruction defining it is not required.'") (citation omitted).

¶ 108 Thus, the only question is whether the court's decision to give the modified supplemental instruction was manifestly arbitrary, unreasonable, or unfair. In our view, the court's supplemental instruction helped the jury implement the elemental instruction by providing further explanation about the meaning of "in the course or furtherance of the immediate flight therefrom." That was the same purpose for which Dearing's counsel offered the proposed instruction. And consistent with Dearing's instruction, the court's

51

supplemental instruction told the jury to focus on whether there was a close temporal connection between the predicate felony and the officer's death, whether Dearing was "fleeing," and whether he was fleeing from the burglary or from some other event.

¶ 109 The supplemental instruction did not lower the prosecution's burden of proof because the elemental instruction properly informed the jury that the prosecution had to prove the "immediate flight" element beyond a reasonable doubt. *See, e.g.*, *People v. Lucas*, 232 P.3d 155, 163 (Colo. App. 2009), *abrogated on other grounds by People v. Miller*, 2024 COA 66.

B. Sufficiency of the Evidence of the "Immediate Flight" Element

¶ 110 Dearing argues that the evidence was insufficient to support a finding that he caused the death of the officer "in the course of or in furtherance of the immediate flight" from the burglary because "several minutes" had elapsed between the "events on the landing" and the shooting; he was "walking away" from the scene, not running or "escaping"; and to the extent he was fleeing, he was fleeing from the police contact, not from the burglary.

¶ 111 First, although the "felony, the flight, and the death [must] be close in time," *People v. Fuentes*, 258 P.3d 320, 327 (Colo. App.

2011), there is "no exact measure of time or distance" required to satisfy the "immediate flight" element of felony murder, *People v. McCrary*, 549 P.2d 1320, 1332 (Colo. 1976) (murder committed more than thirty minutes after the robbery was committed during the flight from the robbery); *see also Fuentes*, 258 P.3d at 327 (flight from burglary was "immediate" even though the defendant stopped and fought with the victims in the street before driving away from the burglary scene).

¶ 112    Here, the evidence established that within thirteen minutes after Dearing left the scene of the burglary, he shot and killed the officer. The neighbor who called 911 testified that at approximately 7 p.m., she saw the group leave the apartment building and walk out to the adjacent parking lot. The other participants drove off in an SUV. Two security cameras captured Dearing walking away from the parking lot and behind the apartment building at 7:05 p.m. Three minutes later, Dearing, having walked into the residential neighborhood where the shooting occurred, called one of the suspected coparticipants. The prosecution argued that Dearing had likely called for help to get away from the scene, after realizing that he had lost his car keys during the burglary. By 7:11 p.m., the

officers had spotted Dearing and attempted to make contact. Dearing dropped his phone and ran. A foot chase ensued, and one or two minutes later Dearing fired his gun and hit the officer.

¶ 113    Whether "the time and distance between the felony and the killing" are sufficiently close "is a factual question for [the] jury to decide." *Auman,* 109 P.3d at 659. There is no authority to support Dearing's view that a thirteen-minute period necessarily breaks the requisite temporal connection. Accordingly, we cannot say that, as a matter of law, thirteen minutes is too long.

¶ 114    Second, we reject Dearing's conclusory argument that "immediate flight" requires evidence that the defendant was continuously running between the time of the predicate felony and the time of the killing. To satisfy the "flight" element of felony murder, it is sufficient to show that the defendant was attempting to escape or avoid arrest. *See Fuentes,* 258 P.3d at 327 ("[T]he word 'flight' limits liability to deaths that occur while a felon is escaping, running away, or fleeing from a felony."); *see also* Merriam-Webster Dictionary, https://perma.cc/FCL8-UYKE (defining flee as "to hurry toward a place of security"). The evidence showed that Dearing left the scene of the burglary, walked into the adjacent neighborhood

54

and called one of the coparticipants (potentially for assistance), then ran from police who attempted to contact him. That evidence is sufficient to establish that Dearing was attempting to escape from the burglary scene and avoid arrest. *See People v. Gladman*, 359 N.E.2d 420, 424-25 (N.Y. 1976) (finding sufficient evidence of "immediate flight" when the defendant walked through a neighborhood and hid under a car in a parking lot).

¶ 115 Third, the officer's attempt to contact Dearing *in relation to the burglary* is not itself an intervening event that breaks the causal connection between the burglary and the killing. The jury could reasonably have concluded that the reason Dearing ran from the officer was to avoid arrest for the burglary. Thus, his flight was not "from some other episode or event." *Auman*, 109 P.3d at 656; *see also Fuentes*, 258 P.3d at 327 ("[T]he concept of immediate flight is broad enough to encompass acts performed after intervening events temporarily interrupt flight.").

V. Cumulative Error

¶ 116 Finally, we reject Dearing's contention that the cumulative effect of the alleged errors deprived him of a fair trial.

¶ 117 "For reversal to occur based on cumulative error, a reviewing court must identify multiple errors that collectively prejudice[d]" the defendant's substantial rights. *Howard-Walker v. People*, 2019 CO 69, ¶ 25. Even considering any assumed errors, we discern no "cumulative prejudice" that affects Dearing's substantial rights. *Id.*

## VI. Disposition

¶ 118 The judgment is affirmed.[7]

JUDGE J. JONES and JUDGE GOMEZ concur.

---

[7] Because the jury acquitted Dearing of first degree murder (after deliberation), we affirm Dearing's conviction for first degree felony murder, and the district court merged the reckless manslaughter conviction into that conviction, we need not address Dearing's argument that the trial court erred by failing to instruct the jury on negligent homicide as a lesser included offense of first degree murder (after deliberation).