22CA0003 Peo v Everett 09-04-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 22CA0003
City and County of Denver District Court No. 19CR1628
Honorable Adam J. Espinosa, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

James L. Everett,

Defendant-Appellant.

---

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division I
Opinion by JUDGE BROWN
J. Jones and Yun, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced September 4, 2025

---

Philip J. Weiser, Attorney General, Jaycey DeHoyos, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Michael C. Mattis, Deputy
State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1    Defendant, James L. Everett, appeals the judgment of conviction entered on a jury verdict finding him guilty of sexual assault on a child.  Everett contends that the district court erred by (1) failing to give the jury a statutorily required cautionary instruction concerning child hearsay; (2) improperly admitting evidence of an injury sustained by the victim; and (3) erroneously admitting prior act evidence and providing the jury with confusing instructions concerning that evidence.  He also contends that the prosecution committed misconduct and that the alleged errors cumulatively deprived him of a fair trial.  Because we conclude that the court's failure to give the child hearsay cautionary instruction amounted to plain error under controlling supreme court precedent, we reverse Everett's conviction and remand for a new trial.

## I.    Background

¶ 2    In February 2019, C.B. disclosed to her father that Everett, her older stepbrother, had sexually abused her repeatedly for years.  The disclosure came after C.B.'s father had confronted her about her interactions with boys and her inappropriate social media use, the two had discussed some of the "very hard things . . . that can happen [to] a young lady," and the father had reassured C.B. that

1

she could tell him anything.  C.B. first provided some details of the abuse in a letter to her father and later filed a police report.  Following the initial report, forensic interviewer Dolce Solis interviewed C.B., and sexual assault nurse examiner Sarah Eckhart examined C.B. (SANE exam).

¶ 3     Most of the abuse occurred when Everett was a minor, and Everett was prosecuted separately for those acts in a juvenile delinquency case.  But the single instance of sexual assault charged in this case was alleged to have occurred sometime between December 1, 2018, and January 31, 2019, when Everett was twenty years old and C.B. was thirteen.

¶ 4     Before trial, the prosecution filed a notice of intent to introduce child hearsay statements under section 13-25-129, C.R.S. 2025.  After an evidentiary hearing, the district court determined that the child hearsay evidence was admissible.

¶ 5     A four-day jury trial began in October 2021.  Although C.B. testified, the bulk of her relatively short testimony focused on the acts of sexual abuse that had occurred from the time she was in "elementary school going into middle school."  She said it happened "way more than [forty]" times.  As for the single instance of charged

2

conduct, C.B. testified only that it had occurred "around Christmas" or "between" Christmas and New Year's Day.  When asked for details of the charged conduct, C.B. responded, "I don't remember the last time.  It's not in my brain.  And if it is, it's locked in a box."

¶ 6      The prosecution also presented the following witnesses and exhibits, which relayed C.B.'s hearsay statements to the jury:

- C.B.'s father testified about C.B. disclosing the abuse to him and the letter she drafted about it.  During the father's testimony, the prosecutor introduced the letter, the court admitted it into evidence, and the prosecutor read it aloud to the jury.  In the letter, C.B. said Everett "would molest [her] nearly every night" and that the abuse "was ongoing until the end of last year."  She wrote that "[t]he reason why [she has] had so many social media issues is because [she] is trying not to think about it."  She said she thought about killing herself and killing Everett and slept with a knife for protection.  After her father asked her to explain what she meant by "molest," C.B. added the following to her letter: "He would force my pant[s] and panties off [and] put his

privates on mine and hump until he got to a point where he was going to nut and then leave." C.B. provided no specific details regarding the charged conduct.

- C.B.'s grandmother testified that she read the letter C.B. wrote and asked C.B. whether it was true. C.B. said, "[Y]es." The grandmother also testified to C.B.'s statements about how long the abuse occurred, why she had not reported it before, and that she wanted to "press charges" against Everett.

- Officer Timasha Haliburton testified about C.B.'s initial police report in late February 2019. During Officer Haliburton's testimony, the court admitted the police report and the prosecutor read it aloud to the jury. In the police report, C.B. said that Everett sexually assaulted her "nearly every night . . . for years" and provided details of how the assaults would occur that were like those included in her letter to her father. She said that "[t]he last time he did [it] was when [she] moved to a bigger apartment" but provided no other details regarding the charged conduct.

4

- Dulce Solis, who was qualified as an expert in child forensic interviewing, testified about the forensic interview she conducted the day after C.B. made her initial police report. During the hour-long interview presented in full to the jury, C.B. recounted the history of the assaults. She told Solis that, starting when she was nine years old and in fourth grade, Everett would come into her room "every night" he stayed at her mother's house, pull down her pants and panties, put his privates "on but not in" her privates, and "hump" her from behind. In response to Solis' questions, C.B. described the first time Everett assaulted her in detail. She said that the abuse stopped when the family moved to a new apartment but that the last time it happened was at that apartment when Everett "came back to visit" "between Christmas and New Year's" in 2018. That time, Everett crawled into C.B.'s bed and got under the covers behind her, but she sat up and said, "No." Everett left and came back multiple times but eventually rolled C.B. away from him, pulled down her shorts and underwear, and "started doing the same thing" on the "outside" of her privates while

5

grabbing her breasts. The prosecutor also admitted Solis' notes from the interview, including diagrams she made with C.B.'s input.

- Detective Marika Lawrenson, who was assigned to investigate the case and observed C.B.'s forensic interview, testified that C.B. identified Everett as the person "she had been talking about earlier in the forensic interview."

- Sarah Eckhart, a pediatric nurse practitioner who was qualified as an expert in sexual assault nurse examination, testified about statements C.B. made during her SANE exam in March 2019. C.B. told Eckhart that she was being examined because she had "been touched inappropriately by a family member" and identified Everett as the perpetrator. C.B. said that the abuse began when she was in fourth or fifth grade, that Everett touched her vagina with his penis, and that she experienced pain but not bleeding. When Eckhart asked C.B. when was the last time it happened, C.B. said, "[E]ither December or January," three months prior.

- C.B.'s mother testified that C.B. told her about the abuse in March 2019. C.B. said, "[F]or the last five years, [Everett] has been molesting me." C.B.'s mother then repeated the details C.B. shared with her about the assaults. As to the charged offense, C.B. said Everett was "drinking beer" and came in, "she tried to fight him off," and "it hurt," which the mother said she understood to mean that Everett penetrated C.B.

¶ 7 The district court did not provide the jury with a child hearsay cautionary instruction. The jury found Everett guilty of the single charged count of sexual assault on a child, and the court sentenced him to eight years to life in the custody of the Department of Corrections.

## II. Child Hearsay Cautionary Instruction

¶ 8 Everett contends that the district court's failure to instruct the jury as required by the child hearsay statute, section 13-25-129(6), constitutes plain error and requires the reversal of his conviction. Under controlling supreme court precedent, we agree.

## A. Applicable Law

¶ 9 Hearsay is "a statement other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." CRE 801(c). Generally, hearsay statements are presumptively inadmissible at trial, absent a relevant court rule or statute. CRE 802.

¶ 10 Section 13-25-129 provides one such exception to the general hearsay rule for out-of-court statements made by a child victim of an unlawful sexual behavior offense.[1] While the statute authorizes the admission of certain child hearsay statements, it also requires that certain procedures be followed when admitting such statements, including that the trial court provide a cautionary jury instruction:

---

[1] As relevant, section 13-25-129(2), C.R.S. 2025, provides that an out-of-court statement made by a child (as defined under the statutes that are the subject of the action — here, a person less than fifteen years of age, § 18-3-405(1), C.R.S. 2025) describing all or part of an offense of unlawful sexual behavior as defined by section 16-22-102(9), C.R.S. 2025, is admissible in any criminal, delinquency, or civil proceeding if the child either testifies or is unavailable and there is corroborative evidence. The statute also requires that the trial court conduct a pretrial hearing to determine that the time, content, and circumstances of the statement provide sufficient safeguards of reliability. § 13-25-129(5)(a).

> If a statement is admitted pursuant to this section, the court shall instruct the jury in the final written instructions that during the proceeding the jury heard evidence repeating a child's out-of-court statement and that it is for the jury to determine the weight and credit to be given the statement and that, in making the determination, the jury shall consider the age and maturity of the child, the nature of the statement, the circumstances under which the statement was made, and any other relevant factor.

§ 13-25-129(6).

¶ 11    The "admission of a child's out-of-court statements through the testimony of other witnesses creates a danger that a defendant's rights may be prejudiced." *People v. McClure*, 779 P.2d 864, 866 (Colo. 1989).  But, particularly in sexual assault cases, the "admission of the child's hearsay statements may be necessary for the prosecution to prove its case." *Id.*  Recognizing this tension, the legislature "struck a balance between the necessity of proof on the part of the prosecution and the danger of unfair prejudice to the defendant." *Id.*

¶ 12    The statute's procedural requirements "are designed to safeguard those rights of the defendant which are implicated when a hearsay statement is permitted into evidence" — namely, the

"defendant's right of confrontation and his due process right to a fair trial." *Id.* To achieve that end, the instruction "directs the jury to use special care in evaluating the credibility of the child who made the statement and the circumstances under which the statement was made." *Id.* Failure to instruct the jury with the required cautionary instruction in the final charge is error. *See id.*[2]

## B. The District Court's Failure to Give the Child Hearsay Cautionary Instruction Was Obvious Error

¶ 13    The district court did not provide the jury with a cautionary instruction on the nature of child hearsay statements as required by section 13-25-129(6). *See* COLJI-Crim. D:12 (2024). Everett contends, the People concede, and we agree that the court erred by failing to give the child hearsay cautionary instruction. *See McClure*, 779 P.2d at 866; *see also People v. Paglione*, 2014 COA 54,

---

[2] In *People v. McClure*, the supreme court determined that section 13-25-129, C.R.S. 1987, required a trial court to "give the cautionary instruction contemporaneously with the admission of this particular type of evidence, and again in the court's general charge to the jury at the conclusion of the case." 779 P.2d 864, 866 (Colo. 1989). The statute has since been amended and now requires only that the instruction be provided in the "final written instructions." Ch. 150, sec. 1, § 13-25-129(2), 1993 Colo. Sess. Laws 515; *see People v. Burgess*, 946 P.2d 565, 568 (Colo. App. 1997).

¶ 45 (trial courts have "a duty to correctly instruct the jury on the law applicable to the case," and we review de novo the instructions as a whole to determine whether they accurately informed the jury).

¶ 14    But defense counsel did not request the instruction and did not object to the court's failure to give it at trial. Consequently, we will only reverse Everett's conviction if the error was plain. *See Hagos v. People*, 2012 CO 63, ¶ 14 (we review all errors that were not preserved by objection for plain error). Plain error is error that is both obvious and substantial. *Id.*

¶ 15    An error is obvious if the act or omission challenged on appeal contravenes a clear statutory command, a well-settled legal principle, or Colorado case law. *People v. Walker*, 2022 COA 15, ¶ 68. Because section 13-25-129(6) requires a child hearsay cautionary instruction, Everett contends, the People concede, and again we agree that the error was obvious. *See Walker*, ¶ 68.

¶ 16    Thus, the narrow question before us is whether the error was substantial — that is, whether it so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction. *Hagos*, ¶ 14. We turn to that question next.

11

## C. The District Court's Failure to Give the Child Hearsay Cautionary Instruction Was Substantial

¶ 17 Everett contends that the district court's failure to give the jury the child hearsay cautionary instruction was a substantial error because the entirety of the evidence supporting the charged allegations was child hearsay, the prosecution used child hearsay to expand the timeframe of the allegations beyond what had been charged in the original information, and the child hearsay witnesses bolstered C.B.'s credibility "in a close case where the result rested on her credibility." We agree with Everett that the error requires reversal under *McClure*, which is binding on us. *See People v. Gladney*, 250 P.3d 762, 768 n.3 (Colo. App. 2010).

¶ 18 Everett was charged with sexual assault on a child under section 18-3-405, C.R.S. 2025. Specifically, the People alleged that "between and including approximately December 1, 2018, and January 31, 2019, [Everett] unlawfully, feloniously, and knowingly subjected [C.B.], not his spouse, to sexual contact and the victim was less than fifteen years of age and the defendant was at least four years older than the victim." The People also alleged that Everett "applied force against the victim in order to accomplish or

12

facilitate the sexual contact," a sentence enhancer that made the crime a class 3 felony. *See* § 18-3-405(2)(a).

¶ 19    C.B.'s trial testimony focused on the assaults Everett committed against her when he was a juvenile, for which Everett faced charges in a separate case. Regarding the charged assault, C.B. testified only that it occurred sometime between Christmas and New Year's Day. She could not remember any other details. As a result, the prosecution could not meet its burden of proof based on C.B.'s testimony alone. There were no eyewitnesses and no physical evidence of the crime.

¶ 20    In fact, the *only* evidence of the single instance of charged conduct and the associated sentence enhancer came in the form of child hearsay, admitted through seven witnesses (including two experts[3] and two police officers), two documents written by C.B., and the video of C.B.'s forensic interview. *See Chirinos-Raudales v. People*, 2023 CO 33, ¶¶ 12, 16 (considering the admissibility of a forensic interview under the child hearsay statute). Notably, the

_____

[3] We acknowledge that Solis did not testify to any statements C.B. made; rather, the hearsay that was admitted during Solis' examination was the recording of C.B.'s forensic interview.

hearsay witnesses and exhibits not only established the elements of the charged offense and sentence enhancer, but they also relayed C.B.'s account of years of sexual assaults perpetrated by Everett, which were admitted under CRE 404(b).

¶ 21 The prosecution also relied on child hearsay to expand the timeframe for the charged conduct and to counter defense evidence that Everett was in Florida from November 9, 2018, until January 3, 2019. The initial complaint charged that the unlawful sexual act occurred sometime between "December 1, 2018, and December 31, 2018." Later, after Eckhart testified during a motions hearing that C.B. told her that the "last incident happened sometime in December or January," the People moved to amend the count to expand the timeframe to include January 31, 2019.

¶ 22 At trial, C.B. testified that the assault occurred between December 25, 2018, and January 1, 2019, a time when Everett was in Florida, according to his evidence. The next day, Eckhart testified that C.B. told her the abuse occurred in "either December or January." The child hearsay Eckhart relayed permitted the prosecution to argue that Everett sexually abused C.B. after he

returned to Colorado on January 3, 2019, even though that argument was inconsistent with C.B.'s account.

¶ 23 In arguing that the error here entitles him to a new trial, Everett relies on *McClure*. In that case, several witnesses testified to hearsay statements made by the child sexual assault victim, but the trial court did not provide the jury with the cautionary instruction required by section 13-25-129. *McClure*, 779 P.2d at 865. The supreme court held that the trial court's failure to instruct the jury was error. *Id.* at 866. Because the defendant failed to request the instruction and failed to object to its omission, the supreme court considered whether the error required reversal under the plain error standard of review. *Id.* at 866-67.

¶ 24 In concluding that reversal was required, the supreme court explained that five witnesses "testified extensively as to the details of the sexual assault" and "corroborated the substance of the other witnesses' testimony." *Id.* at 867. Of the five witnesses, two were qualified as experts and a third was a police officer with "extensive experience in child sexual assault." *Id.* The supreme court warned that "when an expert witness testifies as to a hearsay statement, there is a danger that the jury will accept the statement as true,

without critically evaluating the credibility of the source of the statement." *Id.* at 866. The supreme court also explained that, "[w]ith five witnesses reinforcing [the victim's] testimony concerning the details of the sexual assault, the child's credibility may very well have been bolstered in the eyes of the jury." *Id.* at 867.

¶ 25     "In view of the number of witnesses, their credentials, and the content of their testimony,"[4] the supreme court could not "say that the trial court's failure to give the cautionary instruction to the jury did not prejudice the defendant's rights to a fair trial." *Id.* The supreme court reversed the judgment of conviction and remanded the case for a new trial. *Id.*

¶ 26     Comparing the facts in this case to those in *McClure* compels us to conclude that the error warrants reversal. Here, the prosecution elicited child hearsay through seven witnesses, two documents, and a video — more witnesses and exhibits than were admitted in *McClure*. *See id.* Like *McClure*, two of the witnesses

---

[4] The supreme court did not explain what the victim testified to or what details the other witnesses shared about the sexual assaults, so we are not able to compare the *content* of the child hearsay admitted in that case to what was admitted in this case.

16

were qualified as experts and two others were affiliated with law enforcement. *See id.* at 866-67.

¶ 27    In *McClure,* the child hearsay served to corroborate the victim's in-court testimony and bolster her credibility. *Id.* at 867. Here, the child hearsay corroborated C.B.'s testimony about the prior assaults, thereby bolstering her credibility. But it also served as a complete substitute for C.B.'s testimony regarding the charged assault given C.B.'s inability to recall the details. Although the prosecution is certainly entitled to, and sometimes must, prove its case through child hearsay, *see id.* at 866, such a strategy makes it even more important that the court properly instruct the jury as mandated by statute.

¶ 28    We are not ultimately persuaded by the People's argument that *People v. Wood,* 743 P.2d 422 (Colo. 1987), compels a different conclusion. The controversy in *Wood* centered around the testimony of a single witness — the victim's schoolmate — who "testified that the victim told her that the defendant was sexually abusing her" and that the schoolmate "told the victim to talk to a school counselor." *Id.* at 428. The supreme court observed that the witness' testimony "served merely to corroborate the testimony of

the victim that she had told two of her schoolmates" of the abuse and that "one of them had told her that she 'should have told somebody.'" *Id.* The supreme court concluded that it could not "say with fair assurance that the omission to instruct the jury in accordance with section 13-25-129[(6)] so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction." *Id.*

¶ 29   In *McClure*, the supreme court acknowledged its earlier decision in *Wood* but distinguished it on three bases: (1) *Wood* "involved the testimony of one witness as opposed to five"; (2) in *Wood*, "there was no danger that testimony given by an expert would be imbued with special credibility, whereas in [*McClure*] such a substantial risk does exist"; and (3) the witness in *Wood* did not testify to the details of the sexual acts. *McClure*, 779 P.2d at 867. We can distinguish *Wood* from this case for the same reasons.

¶ 30   While *Wood* considered hearsay testimony from one school-aged child, 743 P.2d at 428, the hearsay here came through seven adult witnesses, including two experts and two police officers. In addition, the sole hearsay witness in *Wood* did not disclose any details of the sexual abuse. *Id.* Here, several witnesses testified

18

about the details of both the charged assault and the prior assaults and were used to introduce documentary and video exhibits that set forth C.B.'s statements detailing the abuse. Finally, although the hearsay evidence was "corroborative" of some of C.B.'s testimony about the prior instances of assault, it was neither "cursory" nor merely "cumulative" of C.B.'s account given her inability to recall specific details of the charged abuse. *Id.*

¶ 31 That said, we see some gaps in the analysis in *McClure* that give us pause. First, as the People contend, any prejudice resulting from the district court's error here was arguably mitigated by the court giving the general credibility instruction, which encourages the jury to judge witness credibility by many of the same factors as the child hearsay cautionary instruction. *See* COLJI-Crim. E:05 (2024). The supreme court in *McClure* did not indicate whether the trial court had given the jury a standard general credibility instruction. But in *Wood,* the court thought that was important to the analysis — and for good reason. The model general credibility instruction says the following:

> You are the sole judges of the credibility of each witness and the weight to be given to the witness's testimony. You should carefully

consider all of the testimony given and the circumstances under which each witness has testified.

For each witness, consider that person's knowledge, motive, state of mind, demeanor, and manner while testifying. Consider the witness's ability to observe, the strength of that person's memory, and how that person obtained his or her knowledge. Consider any relationship the witness may have to either side of the case, and how each witness might be affected by the verdict. Consider how the testimony of the witness is supported or contradicted by other evidence in the case. You should consider all facts and circumstances shown by the evidence when you evaluate each witness's testimony.

You may believe all of the testimony of a witness, part of it, or none of it.

COLJI-Crim. E:05.

¶ 32    By comparison, section 13-25-129(6) says the court must tell the jurors that

during the proceeding the jury heard evidence repeating a child's out-of-court statement and that it is for the jury to determine the weight and credit to be given to the statement and that, in making the determination, the jury should consider the age and maturity of the child, the nature of the statement, the circumstances under which the statement was made, and any other relevant factor.

20

¶ 33    The primary difference between these two instructions is that, unlike the general credibility instruction, the child hearsay cautionary instruction expressly tells the jury that it should consider "the age and maturity of the child" when assessing the credibility of the child's out-of-court statements.  But even in the absence of an express instruction, it is reasonable to believe that jurors would consider the child's age and maturity because those facts are naturally subsumed within the more general considerations expressed in the general credibility instruction.  The court in *Wood* apparently thought so too, since it concluded that the general credibility instruction "adequately made [the jury] aware of its responsibility to examine the credibility of the witnesses." *Wood*, 743 P.2d at 428.  And yet, the court in *McClure* did not even mention the general credibility instruction or acknowledge that just two years earlier it had deemed that instruction important in the plain error analysis.

¶ 34    But if the legislature believed that the general credibility instruction was sufficient to protect the defendant's rights and address the danger of unfair prejudice resulting from the admission of child hearsay, why would it have enacted section 13-25-129(6)

21

requiring an additional instruction?  We do not know.  But we do know that the failure to give the instruction can be harmless because *Wood* tells us that.[5]

¶ 35       Importantly, the supreme court has, in other contexts, held that a failure to follow statutory dictates is harmless unless the defendant can show prejudice.  For example, the supreme court has held that a defendant's loss of a statutorily granted peremptory strike is "necessarily harmless" unless the defendant can show bad faith or actual participation of a biased juror (which would implicate the defendant's constitutional right to a trial before a fair and impartial jury).  *Vigil v. People*, 2019 CO 105, ¶¶ 11-22; *see People v. Novotny*, 2014 CO 18, ¶¶ 14-27.  And notwithstanding *McClure*, we are hard-pressed to imagine what prejudice might come from a trial court's failure to give the child hearsay cautionary instruction when it gave the general credibility instruction.  It may be better

---

[5] Under the supreme court's more recent pronouncements on structural and harmless error, failing to give the child hearsay cautionary instruction cannot be the type of error that mandates reversal regardless of prejudice.  *See, e.g., People v. Abu-Nantambu-El*, 2019 CO 106, ¶¶ 24-25 (erroneous denial of a challenge for cause under section 16-10-103(1), C.R.S. 2025, does not require reversal because the statute does not expressly call for that remedy); *People v. Novotny*, 2014 CO 18, ¶ 20.

practice to give the former, but in these circumstances, it is unlikely to prejudice the defendant to fail to do so.

¶ 36    This brings us to our second concern with the supreme court's analysis in *McClure*. The court emphasized the "suspect nature of hearsay evidence," a point with which we do not quarrel as a general matter, but it did so from the perspective that such evidence undermines "the defendant's right of confrontation and his due process right to a fair trial," two rights that derive from the United States and Colorado Constitutions. *See McClure*, 779 P.2d at 866-67. It seems that the court may have assumed that a special instruction like the one required by section 13-25-129(6) carries with it some constitutional significance. But although "[t]he confrontation right and hearsay rules stem from the same roots and are designed to protect similar interests," *id.* at 866 (citation omitted), we are not aware of any authority holding that failing to instruct the jury specifically to consider the age and maturity of the child who made a hearsay statement violates or even implicates a defendant's constitutional rights. *Cf. Vigil*, ¶ 16 (recognizing that while the legislature confers peremptory challenges in aid of protecting a defendant's right to a fair and impartial jury, such

challenges have no basis in the constitution and are purely a creature of legislation).[6]

¶ 37    Third, the legislature has already walked back part of *McClure*'s holding.  In *McClure*, the court observed that the statute did not say when in the course of a trial a court must give the instruction.  It then held that "a trial court must give the cautionary instruction contemporaneously with the admission of this particular type of evidence, and again in the court's general charge to the jury at the conclusion of the case, and failure to do so is reversible error."  *McClure*, 779 P.2d at 866.

¶ 38    But in 1993, the legislature amended the statute to clarify that the instruction must be given only in "the final written instructions."  Ch. 150, sec. 1, § 13-25-129(2), 1993 Colo. Sess. Laws 515 (now codified at § 13-25-129(6)).  Given that the requirement to give the instruction is entirely a creature of statute, the legislature's partial abrogation of *McClure* would seem to

---

[6] The same could be said of the statutory speedy trial deadline established by section 18-1-405(1), C.R.S. 2025.  While that deadline is intended to protect a defendant's constitutional right to a speedy trial, *see Simakis v. Dist. Ct.*, 577 P.2d 3, 4 (Colo. 1978), the six-month deadline itself is not constitutionally mandated.

counsel in favor of attributing less weight to the potential prejudice occasioned by failing to give the instruction.

¶ 39 Were we writing on a clean slate, these points might persuade us that failing to give the child hearsay cautionary instruction in this case did not so undermine the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction. *See Hagos*, ¶ 14. But we are not writing on a clean slate. *McClure* is the law. And we do not see enough daylight between the facts in *McClure* and the facts in this case to justify distinguishing *McClure* on any principled basis.

¶ 40 With so many witnesses and exhibits "reinforcing [C.B.'s] testimony concerning the details of the sexual assault, the child's credibility may very well have been bolstered in the eyes of the jury." *McClure*, 779 P.2d at 867. "In the absence of the cautionary instruction, which makes the jury aware of the suspect nature of hearsay evidence, the jury may have failed in its responsibility to examine the credibility of the source of these statements." *Id.* "In view of the number of witnesses, their credentials, and the content of their testimony, we cannot say that the [district] court's failure to

25

give the cautionary instruction to the jury did not prejudice the defendant's rights to a fair trial." *Id.*

¶ 41 Thus, we conclude that the district court's failure to instruct the jury as required by section 13-25-129(6) constitutes plain error and mandates reversal. And because the balance of Everett's contentions involve alleged errors that are unlikely to arise in the same context on remand, we decline to address them. *See People v. Aldridge*, 2018 COA 131, ¶ 43.

### III. Disposition

¶ 42 We reverse the judgment of conviction and remand the case to the district court for a new trial.

JUDGE J. JONES and JUDGE YUN concur.